THE MEMORIAL HOSPITAL vs. LABOR RELATIONS
COMMISSION & another[1]
(and a companion case[2]).

Worcester.   December 9, 1966. — February 2, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Labor.   Hospital.*

The State Labor Relations Law, G. L. c. 150A, as amended through
St. 1964, c. 576, does not apply to employees other than nurses of a
nonprofit general hospital constituting a public charity.

PETITIONS filed in the Superior Court on October 19, 1965,
and October 26, 1965.

The International Union of Operating Engineers, AFL–
CIO, was allowed to intervene in each case.   The cases
were heard by *Macaulay, Kalus,* and *Moynihan,* JJ.

*James J. Cody, Jr.,* for Massachusetts Labor Relations
Commission.

*Francis J. Ulman* for the intervener.

*Richard W. Mirick* (*Robert J. Martin* with him) for The
Memorial Hospital.

WILKINS, C.J.   The Labor Relations Commission of the
Commonwealth and the intervening union appeal from final
decrees entered by order of a court of three judges of the
Superior Court appointed pursuant to G. L. c. 212, § 30
(inserted by St. 1959, c. 600).

The three-judge court reviewed the orders and decisions
of the commission pursuant to G. L. c. 30A, § 14, as required
by the State Labor Relations Law, G. L. c. 150A, § 6 (e) (f),
as respectively amended through St. 1954, c. 681, §§ 10, 11.
The appeals relate to two cases before that court, in both
of which the International Union of Operating Engineers,
AFL–CIO, was allowed to intervene:

---

[1] International Union of Operating Engineers, AFL–CIO, the intervener.

[2] The companion case is by the respondents in the first case against the peti
tioner in the first case.

A.   Case numbered 772 Equity, The Memorial Hospital
v. Labor Relations Commission, for judicial review of or-
ders of the commission, dated June 21, 1965, and Septem-
ber 22, 1965, sought a determination whether the commission
had jurisdiction to act upon (1) a petition to the commission
by the union for certification of the union as collective bar-
gaining representative of all licensed firemen employed by
the hospital, or (2) a complaint of the union that the hos-
pital was engaging in unfair labor practices as defined in
c. 150A.

B.   Case numbered 785 Equity, Labor Relations Commis-
sion v. The Memorial Hospital, under c. 150A, § 6 (e), for
enforcement of the order of the commission dated Septem-
ber 22, 1965, respecting unfair labor practices.

The final decree in each case provided ''That the decision
and orders of the Labor Relations Commission dated Sep-
tember 22, 1965 in the matter of the International Union of
Operating Engineers, AFL–CIO versus The Memorial Hos-
pital and the order of certification by the Commission dated
June 21, 1965 relating thereto be and the same are hereby
set aside in whole as in excess of the statutory authority and
jurisdiction of the Labor Relations Commission.'' The
final decree in case No. 785 also provided that the petition
be dismissed.   The commission appealed.

The basic issue is whether G. L. c. 150A, as amended
through St. 1964, c. 576, entitled, ''An Act to extend the cov-
erage of the state labor relations law to include health care
facilities and certain nurse employees thereof,'' applies to
all employees of a ''health care facility'' or is limited to
nurses, as its title would seem to imply.   See *Cumberland
Farms, Inc.* v. *Milk Control Commn.* 340 Mass. 672, 678.

As stated in the decision of the three-judge court, specif-
ically involved are issues as to the commission's jurisdic-
tion under c. 576 (1) to certify the union as the collective
bargaining representative of the licensed stationary firemen
employed by and at the hospital in Worcester; (2) to order
and conduct an election among the firemen which resulted
in the designation of the union as their collective bargaining
representative; and (3) upon complaint of an unfair labor

practice against the hospital by the union to issue cease and desist orders for refusal to bargain collectively.

In *Saint Luke's Hosp.* v. *Labor Relations Commn.* 320 Mass. 467, it was held that under G. L. c. 150A, as it then read, "a hospital which is organized and conducted as a public charitable institution is not covered by the act" (p. 474). We there said: "Our act impliedly excludes from the commission jurisdiction over matters not affecting industry and trade. Indeed, § 5 (c) of our act, under which the application for certification was filed by the union, provides that 'Whenever a question affecting industry and trade arises concerning the representation of employees, the commission may investigate such controversy and certify to the parties, in writing, the name or names of the representatives who have been designated or selected' " (p. 471). "Such a hospital is not conducting a business or commercial enterprise. It is not engaged in industry and trade" (p. 472).

A number of changes in c. 150A were made by St. 1964, c. 576. As the decision of the court of three judges correctly stated, there is no question that c. 576 "was intended to extend the rights and privileges of the labor relations act to nurses, both registered and practical nurses (excepting members of religious orders) employed by a 'health care facility,' giving such nurses the right to organize and select collective bargaining representatives of their own choosing and providing for arbitration of disputes and grievances arising between health care facilities and their nurse employees if they could not be adjusted through collective bargaining."

The three-judge court held that The Memorial Hospital is a "health care facility" as that term is defined in c. 150A, § 2 (10), inserted by c. 576, § 3, and that it "is essentially a public charity like Saint Luke's Hospital as that hospital is described" in 320 Mass. 467. It is a nonprofit general hospital catering to patients generally and providing medical and surgical treatment for which no charge is made for those unable to pay. It treats all patients. It depends for its support on patients' charges, gifts, donations, and re-

ceipts from public welfare agencies of local, State, and Federal governments. Its operating deficit is cared for from income or other distributions from endowment funds. It has facilities for 350 beds, employs 800 persons, 500 being full-time and 300 part-time employees. Among these are 150 registered nurses, 75 practical nurses, 100 nurses' aides, and 100 nurses' helpers. Four hundred do not perform nurses' duties, if these duties are considered to mean direct care of patients. It employs laboratory analysts, laboratory assistants, and other people of like skills, dietitians, cooks, bakers, kitchen help, carpenters, painters, maintenance people, laundry workers, and seven stationary firemen. The firemen operate the steam boilers and compressors, which supply hot water, distilled water and steam used for sterilization, laundering, preparation of food, dishwashing, heating, cleaning, air conditioning, and other hospital needs. In general, the whole hospital, its staff, operations, and problems do not differ significantly from those of any other general hospital of 350-bed capacity.

The commission lays great store by § 2 (10) (11) inserted by c. 576, § 3.[1] Its argument that the hospital is an employer within the meaning of the statute fails to recognize the real question, which is who are the affected employees. In § 2 (3), as amended by c. 576, § 2,[2] there were added the

---

[1] "(10) The term 'health care facility' shall include any person, including the commonwealth or any political subdivision thereof, acting in the interest of an employer, directly or indirectly, and engaged, whether or not for profit or as a public charity, in the operation of a general, mental, chronic disease, tuberculosis, or other type of hospital, clinic or infirmary, of a convalescent or nursing home, of a visiting nurses association, of a public health agency, or of any related facility such as a laboratory, an outpatient department, a nurses' home or a training facility.

"(11) The term 'nurse employee' means any registered nurse or licensed practical nurse, except that it does not include any member of a religious order."

[2] "(3) The term 'employee' shall include any employee, and shall not be limited to the employees of a particular employer, unless the chapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, and shall include any nurse employee of a health care facility, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse."

words, "and shall include any nurse employee of a health care facility." The omission to mention other employees is most significant. It must be remembered that under the *Saint Luke's Hospital* case, decided in 1946, the commission had no jurisdiction over any employees whatsoever of a hospital like The Memorial Hospital. A heavy burden rests upon any who would overturn that decision upon the simple fact that c. 576 extends the scope of c. 150A to embrace nurses. We are reluctant unduly to protract our opinion in order to refute other arguments put forth to sustain that burden, particularly where the decision of the three-judge court has convincingly answered those arguments.

A new paragraph was added at the end of c. 150A, § 1, by c. 576, § 1.[1] This contained four clauses, of which (a), (b), and (d) referred to "nurse employees" only. In this aspect, the three-judge court made the sound observation that "nowhere in the section is it declared to be the policy of the Commonwealth to promote collective bargaining with all hospital employees as is specifically declared for nurses in clause (a) of the section." As was said by Mr. Justice Ronan in the *Saint Luke's Hospital* case (p. 474), "The policy limits the scope of the act."

*Final decrees affirmed.*

---

[1] "It is further declared to be the policy of the commonwealth, in the interests of preserving the continuity and improving the quality of health care within the commonwealth: (a) to promote collective bargaining between health care facilities and their nurse employees, except members of religious orders, irrespective of whether or not any such facility is operated for profit or as a public charity; (b) to protect the right of nurse employees of health care facilities, except members of religious orders, to organize and select collective bargaining representatives of their own choosing; (c) to prevent lockouts, strikes, slowdowns or withholding of goods and services in health care facilities, and (d) to provide for arbitration of disputes or grievances arising between health care facilities and their nurse employees if they cannot be adjusted through collective bargaining."