WHEATON COLLEGE & another *vs.* LABOR RELATIONS COMMISSION.

Suffolk.    April 6, 1967. — June 14, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, & REARDON, JJ.

*Labor.  College.  Charity.  Jurisdiction,* Labor.

A woman's college conducted as a nonprofit institution and providing dining facilities for its resident students and faculty which were not open to the public and did not make a profit, and a professional food service corporation which entered into a contract with the college whereby they both operated the dining facilities jointly and as joint employers of the permanent workers in the facilities, and such workers, were engaged in discharging part of the college's educational purposes and not in com-

---

mercial activity, and the operation of the facilities was not an "industry and trade" and was not within the scope of the State Labor Relations Act, G. L. c. 150A.

PETITION filed in the Superior Court on June 15, 1965.

Upon transfer to the Supreme Judicial Court for the county of Suffolk the case was reserved and reported by *Reardon, J.,* without decision.

*John R. Hally (Gordon P. Ramsey* with him) for the petitioners.

*Joseph A. Furnari (Daniel P. Collins* with him) for the respondent.

REARDON, J. Wheaton College (Wheaton) and Saga Food Service of Massachusetts, Inc. (Saga) have filed this petition for a writ of prohibition against the Massachusetts Labor Relations Commission (Commission) to prevent the Commission from hearing and determining a representation petition filed by the Retail, Wholesale, Department Store Union, A.F.L.–C.I.O. (Union) pursuant to G. L. c. 150A, § 5 (c). The Union sought certification as the exclusive bargaining representative of a unit of approximately forty-five cafeteria and dining room employees, excluding supervisors and casual and temporary workers, employed by Saga in the dining facilities operated for the resident students and faculty on the Wheaton campus in Norton, Massachusetts. Saga appeared specially before the Commission and filed a motion to dismiss on the ground that Saga was engaged in interstate commerce and thereby subject to the exclusive jurisdiction of the National Labor Relations Board. The Union then filed a similar petition with the National Labor Relations Board, which subsequently declined to assert jurisdiction. The Commission allowed Wheaton to intervene and file a motion to dismiss on the ground that the Commission lacked jurisdiction because the operation of Wheaton's dining facilities was not an industry or trade within the meaning of G. L. c. 150A. The instant petition was filed after the Commission denied the motions to dismiss and set the case down for hearing on the merits. The petition was reported without decision to

the full bench by the single justice upon the pleadings and a stipulation of facts and exhibits.

Wheaton is a nonprofit liberal arts college for women having more than 1,000 students, almost all of whom are resident students paying a comprehensive fee for tuition, room and board. Wheaton provides dining facilities for its resident students and faculty in four student dining rooms, one faculty staff dining room, and a snack bar, none of which is open to the public. Before 1959 Wheaton operated these facilities itself. Since then Wheaton has contracted with Saga under arrangements by which both operate the aforesaid facilities. Saga, a Massachusetts corporation, has food service contracts with Wheaton and two other nonprofit educational institutions within the Commonwealth. It is a wholly owned subsidiary of Saga Food Service, Inc., a nationwide food caterer specializing exclusively in institutional feeding. Saga's anticipated gross volume of sales for its three Massachusetts food facilities in 1965, the year in which the Union's petition was filed, was approximately $1,200,000.

It has been stipulated that Wheaton and Saga operate the food and dining facilities as joint employers. Saga has since 1964 employed necessary full time personnel. It has charge of the handling of the payroll, bookkeeping incident to the operation, and the day to day operation of the various facilities. Saga is reimbursed for its services by Wheaton on a fixed rate a student day within certain limits established by the Wheaton budget. Wheaton and Saga together plan the quantity and quality of menus. Wheaton reserves the right of overall supervision of the food service program as well as the safety, sanitation and maintenance of the premises used in the operation. Wheaton provides and maintains the dining facilities, durable equipment, utilities, trash removal and general maintenance, and is required to purchase additional equipment as it is needed. Most of the employees in the dining facilities are Wheaton students working under the college's student aid program on a part time basis. Wheaton holds out

to the public certain supervisory personnel of Saga as members of the Wheaton business office. None of the full time employees of the food service operation may be discharged without Wheaton's approval. A considerable number of the full time personnel are covered under Wheaton's non-academic retirement program or Blue Cross-Blue Shield program.

This petition for a writ of prohibition raises the issue of whether the Commission has jurisdiction to entertain the Union's petition for certification as the exclusive representative of the permanent cafeteria and dining room workers employed by Wheaton and Saga in their joint operation of the food facilities on the Wheaton campus. We assume, without deciding, that although Saga's volume of business clearly brings it within the jurisdiction of the National Labor Relations Board, the declination of jurisdiction by the board of a petition filed in behalf of the same employees by the Union removes any Federal bar to the Commission's assumption of jurisdiction over the petition filed with it by the Union.[1] We therefore need only consider whether the Commission has power under the State Labor Relations

---

[1] The Commission's jurisdiction would be predicated on 73 Stat. 541, 29 U. S. C. § 164 (1964):

"(c) (1) The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: *Provided*, That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959.

"(2) Nothing in this subchapter shall be deemed to prevent or bar any agency or the courts of any State or Territory (including the Commonwealth of Puerto Rico, Guam, and the Virgin Islands), from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction."

See also G. L. c. 150A, § 10 (b), which provides:

"(b) This chapter shall not be deemed applicable to any unfair labor practice involving employees who are subject to and protected by the Federal Railway Labor Act, or to any unfair labor practice governed exclusively by the national labor relations act or other federal statute or regulations issued pursuant thereto, unless the federal agency administering such act, statute, or regulation has declined to assert jurisdiction thereof, or except where such federal agency has conceded to the commission jurisdiction over any such case or proceedings."

Law, G. L. c. 150A, to investigate and certify the Union as the exclusive bargaining agent of those employed on a full time basis in Wheaton's dining facilities.

The case of *Saint Luke's Hosp.* v. *Labor Relations Commn.* 320 Mass. 467, controls the outcome of the petition presently before us. That decision held that neither a hospital organized and conducted as a public charitable institution nor its nonprofessional employees performing manual labor in its maintenance and operation were engaged in "industry and trade" within the meaning of G. L. c. 150A. For that reason, a decree was entered enjoining the Commission from entertaining a representation petition filed under § 5 (c) of c. 150A since that section by its terms limited the Commission's jurisdiction to questions "affecting industry and trade." We recently reaffirmed the *Saint Luke's Hosp.* case in holding that St. 1964, c. 576, amended c. 150A only to the limited extent of conferring the benefits of the act upon nurse employees of health care facilities. *Memorial Hosp.* v. *Labor Relations Commn.* 351 Mass. 643.

The principles enunciated in the *Saint Luke's Hosp.* case are equally applicable to Wheaton. It is a four year, nonsectarian, nonprofit, educational institution for women incorporated in 1837 by an act of the General Court of the Commonwealth. It grants the degree of Bachelor of Arts. "The promotion of education by nonprofit institutions not maintained at public expense has from early times been often asserted, recognized or reaffirmed as a public purpose." *Worcester* v. *New England Inst. & New Eng. Sch. of Accounting, Inc.* 335 Mass. 486, 489, and authorities cited. It is well known that the payments made by students for their tuition and other fees defray only in part the cost of their education, the remainder being provided by endowments, contributions, and other sources of income. In a very real sense, Wheaton and other nonprofit educational institutions perform quasi-charitable functions in addition to their overriding educational purposes. See *Dexter* v. *Harvard College,* 176 Mass. 192, 194–195, and cases cited. For purposes of tort and tax law, no distinction is drawn

between educational institutions and other charitable or
nonprofit institutions. See, e.g., *Assessors of Boston* v.
*Garland Sch. of Home Making,* 296 Mass. 378 (tax im-
munity); *Assessors of Dover* v. *Dominican Fathers, Prov-
ince of St. Joseph,* 334 Mass. 530, 538, and cases cited (tax
immunity); *Boxer* v. *Boston Symphony Orchestra, Inc.*
342 Mass. 537, 540–541 (tort immunity); *Grueninger* v.
*President & Fellows of Harvard College,* 343 Mass. 338
(tort immunity). In furtherance of its educational pur-
poses, Wheaton provides food and dining facilities for its
resident students. Almost twenty per cent of Wheaton's
student body earn part of their college expenses working in
the dining rooms. Wheaton "is not conducting a business
or commercial enterprise. It is not engaged in industry
and trade." *Saint Luke's Hosp.* v. *Labor Relations
Commn., supra,* at 472.

We do not understand the Commission to argue that a
nonprofit educational institution is any more engaged in
"industry and trade" than is a charitable hospital. How-
ever, in spite of our recent decision reaffirming the *Saint
Luke's Hosp.* case, *Memorial Hosp.* v. *Labor Relations
Commn.* 351 Mass. 643, virtually all of the arguments ad-
vanced by the Commission are the same as those made and
rejected over twenty years ago in the *Saint Luke's Hosp.*
case. During the intervening years the general court, al-
though it has extended the privilege of collective bargain-
ing to new categories of employees,[2] has not seen fit to
change the rule of the *St. Luke's Hosp.* case and extend the
coverage of G. L. c. 150A generally to employees of non-
profit educational and other charitable institutions. Nei-
ther Wheaton nor its employees whom the Union seeks to
represent come within the scope of G. L. c. 150A. See
*Washington & Jefferson College* v. *Pennsylvania Labor Re-
lations Bd.* 55 Dauphin Co. Rep. 182. See also *Trustees of
Columbia Univ.* v. *Herzog,* 269 App. Div. 24, affd. 295 N. Y.

---

[2] See, e.g., St. 1964, c. 576, amending G. L. c. 150A; St. 1965, c. 763, ex-
tending statutory bargaining rights to municipal employees.

605; *Rhodes Preparatory Sch.* v. *Kelley,* 64 N. Y. S. 2d 112, affd. 271 App. Div. 823, 296 N. Y. 951.

That Wheaton has engaged a professional food management service to make more efficient the operation of its dining facilities and to provide its students with better food at lower cost does not compel the conclusion that Wheaton is thereby engaging in "industry and trade." This is true even though the parties have stipulated that Saga is a "joint employer" with Wheaton in the operation of the latter's food facilities. The application of the rationale of the *Saint Luke's Hosp.* case does not necessarily depend on a delineation of the legal relationship, so easily manipulated by contract, existing between a nonprofit institution and those it engages to perform functions in furtherance of its educational purposes. Rather, the relationship which is determinative of coverage by the labor relations act is that existing between the institution and "industry and trade." "We need not consider what the relationship of the hospital to industry and trade would be if it were engaged in commercial undertakings, as the care and letting of realty or the conduct of a mercantile establishment, for the benefit of the hospital and employed persons in such undertakings." *Saint Luke's Hosp.* v. *Labor Relations Commn., supra,* at 472. Notwithstanding the Commission's assertions, Wheaton and Saga are not engaged in commercial activity as restaurateurs. Wheaton's dining facilities are not open to the public and do not make a profit. Saga performs an integral function in the furtherance of Wheaton's educational purposes, subject to Wheaton's continuing control and supervision. Similarly, the affected employees are engaged not in a commercial enterprise but in discharging part of Wheaton's educational purposes. In no way does Saga's presence alter the conclusion that Wheaton's operation of its dining facilities does not cause it to be engaged in "industry and trade."

Our conclusion is consistent with the policy of the National Labor Relations Board to decline jurisdiction over the operations of nonprofit educational institutions even

though they employ professional food service corporations to manage their dining facilities. *Crotty Bros. N. Y. Inc.* 146 N. L. R. B. 755. *Prophet Co.* 150 N. L. R. B. 1559. *Sage Food Serv. of Ohio, Inc.* 1965 C. C. H. N.L.R.B. Decisions, § 9222. The board has decided that it would not effectuate the policies of the Federal act to assert jurisdiction over such food service operations since they are intimately tied to the educational purposes of the educational institutions. The policies of the Federal and our State Labor Relations Law have been declared to be the same. *Hathaway Bakeries, Inc.* v. *Labor Relations Commn.* 316 Mass. 136, 146, and cases cited. Since "[t]he policy limits the scope of the act" the Commission has no power to entertain the petition filed in behalf of these employees. See *Saint Luke's Hosp.* v. *Labor Relations Commn.* 320 Mass. 467, 474.

*Writ to issue.*