DEREK ALLEN & others *vs*. SCHOOL COMMITTEE OF BOSTON
& others.[1]

Suffolk. January 16, 1986. — January 17, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Practice, Civil*, Standing. *Labor Relations Commission. Public Employ-
ment*, Strike. *Labor*, Strike by public employees. *School and School
Committee*, Transportation of students.

Private citizens had no standing to seek injunctive relief against a work stop-
page by drivers employed by two bus companies which had contracted
with the Boston school committee to provide transportation to special
needs children in the Boston public schools. [585-588]

CIVIL ACTION commenced in the Superior Court on June
10, 1976.

A motion for injunctive relief, filed on January 6, 1986,
was heard by *Thomas R. Morse, Jr., John J. Irwin,* and *Cort-
land A. Mathers,* JJ., and questions of law were reported by
*Morse, J.,* to a single justice of the Supreme Judicial Court.

On petition for relief from a preliminary injunction filed in
the Supreme Judicial Court for the county of Suffolk on January
10, 1986, the proceedings were consolidated by *Wilkins, J.,*
and, after hearing, questions of law were reported by him.

*Warren H. Pyle* for Local 8751, United Steelworkers of
America, AFL-CIO.

*Thomas A. Mela (Richard L. Alfred & Jane S. Schacter*
with him) for the plaintiffs.

*Scott C. Moriearty (John F. Adkins, Harriet E. Gould &
James N. Rice* with him) for Transcomm, Inc. & another.

*Marien E. Evans,* Special Assistant Corporation Counsel,
for the School Committee of Boston.

[1] Local 8751, United Steelworkers of America, AFL-CIO; National
School Bus Service, Inc.; and Transcomm, Inc.

*Judith M. Neumann* for Labor Relations Commission, amicus curiae, submitted a brief.

WILKINS, J. We have before us, on report by a single justice, questions relating to the propriety of a preliminary injunction issued by a three-judge panel of the Superior Court. That preliminary injunction in effect ordered the officers and members of Local 8751, United Steelworkers of America, AFL-CIO (union), to cease their work stoppage and "to provide transportation to special needs children in the Boston public schools as agreed and provided in the contracts entered into between the School Committee, Transcomm, Inc. and National School Bus Service, Inc." The bus companies are obliged to provide transportation services to the school committee pursuant to contract. The bus companies and the union have not been able to negotiate a collective bargaining agreement, and the drivers have declined to work further without an agreement.

The action in which the preliminary injunction was issued was commenced almost ten years ago as a class action on behalf of special needs students in the Boston public schools to obtain reliable and substantially uninterrupted transportation to and from school. When the current work stoppage commenced, the plaintiffs sought injunctive relief. We need not recite the details of the issuance of a temporary restraining order now superseded by the preliminary injunction. At the union's request, a three-judge panel was convened and, on January 6, 1986, it heard argument of counsel as to whether a preliminary injunction should issue. Although the dispute before the three-judge panel concerned only the plaintiffs' request for a preliminary injunction against the union and its members, the bus companies and the school committee were represented at the hearing and participated through counsel.

The basic thrust of the plaintiffs' argument was that the bus drivers are public employees who have no right to strike and that, to protect the public interest, the strike should be enjoined. The three-judge panel, in its memorandum and order, stated that "[a]lthough the question is not without doubt, the court finds that, for the purposes of this case, the defendant drivers are in fact public employees. Accordingly, injunctive relief is

appropriate under G. L. c. 150E, § 9."[2] The three-judge panel also concluded that, as a panel convened pursuant to G. L. c. 212, § 30 (1984 ed.), it had authority to grant injunctive relief to achieve the goal of the underlying action — requiring the school committee to provide appropriate transportation services. The preliminary injunction issued on January 7, 1986.

On January 10, 1986, the union sought relief from the injunctive order by filing a petition for the annulment of the preliminary injunction under G. L. c. 231, § 118 (1984 ed.). On the same day, the presiding judge of the Superior Court panel reported certain questions to a single justice of this court, purportedly pursuant to G. L. c. 214, § 6 (6) (1984 ed.). A single justice of this court consolidated the two matters before him and, on that same day, heard argument of counsel for the parties (and for the Labor Relations Commission, as amicus curiae). On January 14, pursuant to Mass. R. Civ. P. 64, 365 Mass. 831 (1974), the single justice reported three questions to the full bench noting that "not all of them necessarily need be answered." Excluding the single justice's explanatory comment associated with each question, the reported questions are as follows:

"1.  Do the plaintiffs in this case have the right by a direct action in the Superior Court to obtain a preliminary injunction against a strike by the Boston bus drivers, assuming that (for the purposes of this question) the drivers are public employees?"

"2.  Is the doctrine of primary jurisdiction applicable, on the facts of this case, so as to require that courts abstain from deciding the question whether the Boston bus drivers are 'public employees' until the Labor Relations Commission has decided the question?"

"3.  If the court concludes that primary jurisdiction does not bar consideration of the question and that the plaintiffs have the right to an injunction in a direct action on this record, are the Boston bus drivers 'public employees' within the meaning of Sec. 9A(*a*)?"

---

[2] We suspect the reference was intended to be to G. L. c. 150E, § 9A (1984 ed.).

The first question asks whether individual citizens have standing to obtain injunctive relief against the bus drivers' strike. Our negative answer to that question is largely dispositive of the propriety of the preliminary injunction.

We start with the basic premise that it is unlawful for public employees to strike. "No public employee or employee organization shall engage in a strike . . . ." G. L. c. 150E, § 9A (*a*) (1984 ed.). We note that G. L. c. 150A, § 3 (1984 ed.), permits nonpublic employees to engage in a strike. For purposes of analyzing the question of the plaintiffs' standing to obtain injunctive relief, we assume that the members of the union are public employees. It seems clear that any public employer of the bus drivers, if there is one, could seek relief against the strike through the Labor Relations Commission. "Whenever a strike occurs or is about to occur, the employer shall petition the commission to make an investigation. If, after investigation, the commission determines that any provision of paragraph (*a*) of this section has been or is about to be violated, it shall immediately set requirements that must be complied with, including, but not limited to, instituting appropriate proceedings in the superior court for the county wherein such violation has occurred or is about to occur for enforcement of such requirements." G. L. c. 150E, § 9A (*b*).

We believe that the only avenue of judicial relief available to a public employer seeking to end a work stoppage is to petition the commission pursuant to § 9A (*b*). Prior to the enactment of § 9A (*b*), a public employer could obtain direct injunctive relief against a work stoppage by its employees. See *Hansen* v. *Commonwealth,* 344 Mass. 214 (1962). Although a public employer is not helpless against taking certain action without the commission's involvement when its employees strike (see *Lenox Educ. Ass' n* v. *Labor Relations Comm' n,* 393 Mass. 276, 285 [1984]; *Utility Workers Local 466* v. *Labor Relations Comm'n,* 389 Mass. 500, 503-504 [1983]), we have said that a public employer must proceed under G. L. c. 150E, § 9A (*b*), "if it wishes to obtain administrative or *judicial* relief from employee violations of [§ 9A (*a*)]" (emphasis supplied). *Lenox Educ. Ass'n* v. *Labor Relations*

*Comm'n, supra.* Almost ten years ago this court commented on the appropriateness of the involvement of the commission pursuant to § 9A (*b*), noting that the statute "looks to the intervention in a strike situation of an impartial agency with specialized experience." *Director of the Div. of Employee Relations* v. *Labor Relations Comm'n,* 370 Mass. 162, 170-171 (1976). We continued: "Even where resort by the Commission to a court becomes necessary, the fact that it is an independent body that seeks the order, instead of the employer as before the enactment of c. 150E, . . . is likely to make the result more acceptable to the employees" (citations omitted). *Id.* at 171.

Because of the strong legislative policy requiring a public employer to seek the commission's intervention in order to obtain judicial relief from a work stoppage by its employees, we conclude that a private citizen (or group of private citizens) may not obtain injunctive relief against a work stoppage by public employees, barring, of course, some immediate and substantial threat to the public health, safety, or welfare. If we were to allow other persons to obtain by direct litigation what the public employer itself cannot, the requirements of § 9A (*b*) would be too easily circumvented.[3]

We recognize the adverse effect of the work stoppage. The plaintiffs represent those students, as a group, who are most in need of transportation to school and who are among the most vulnerable if education is denied them. But we must observe statutory restrictions on judicial intervention to prevent strikes by public employees. If the Legislature wishes to change

---

[3] Even in the absence of limitations on the availability of judicial remedies such as are contained in G. L. c. 150E, § 9A (*b*), courts have denied interested private citizens standing to seek injunctive relief against a strike by public employees. See *Allen* v. *Maurer,* 6 Ill. App. 3d 633, 640-641 (1972); *Woodbridge State School Parents Ass'n* v. *AFSCME,* 180 N.J. Super. 501, 505-506 (1981). But see *Air Transp. Ass'n* v. *Professional Air Traffic Controllers Org.,* 313 F. Supp. 181, 183-184 (E.D.N.Y.), modified on other grounds sub nom. *United States* v. *Professional Air Traffic Controllers Org.,* 438 F.2d 79 (2d Cir. 1970), cert. denied, 402 U.S. 915 (1971) (air traffic controllers enjoined from work stoppages in action by airline association and airlines).

the governing statute to provide persons such as the plaintiffs standing to seek relief against work stoppages, in court or through the commission, it may, of course, do so.[4] There may, however, be a logical basis for a policy that permits only the employer, with the involvement of the commission at such time as the employer elects, to initiate the process that might lead to an injunction against a strike when there is no collective bargaining agreement in effect. Intervention by persons who would not be parties to any collective bargaining agreement that might ultimately be worked out could hinder the bargaining process.

We construe the decision of the three-judge panel as based principally on its conclusion that the bus drivers are public employees and that, on request of a class representative of special needs students in the public schools, the Superior Court has the authority to grant injunctive relief against the strike. We need not answer the question whether the bus drivers are public employees and whether the Boston school committee is their public employer. If that issue ever arises, it will likely be considered first by the commission. We recognize that, in circumstances that the plaintiffs and the bus companies assert are significantly different, the commission has said that school bus drivers are not public employees. If the commission were to adhere to its position in the *Hudson* case, in spite of any factual differences between this case and that case, school bus drivers working for an independent bus company would not be public employees subject to the statutory prohibition against strikes. *Kenneth Hudson, Inc.,* 4 M.L.C. 1630, 1634-1636 (1977).[5]

We find no special circumstances nor anything in the orders or stipulations entered in this long-pending action that would justify the issuance of the preliminary injunction against the

[4] We express no view on whether injunctive relief against the school committee in some other form might be appropriate, to require it either to petition the commission under § 9A (*b*) or meet its transportation obligations in some other manner.

[5] Amendments to G. L. c. 150A, §§ 1 and 2 (2) and (3), made by St. 1983, c. 509, §§ 1 and 2, may be significant in determining whether the bus companies are employers covered by G. L. c. 150A.

union. The work stoppage does not violate any prior order directing the union to provide transportation services in the absence of a collective bargaining agreement.

We do allude to one argument advanced by the bus companies and lately embraced by the plaintiffs and the school committee. The contention was not made to the Superior Court panel. If that panel's action could be sustained on some valid theory not raised before it, this court may, and perhaps should, acknowledge the theory and apply it to sustain the lower court's action. The claim is that each bus driver has joint employers, the bus company and the school committee. In such a case, the argument goes, neither G. L. c. 150E, § 9A (*a*) (which bars a strike), nor G. L. c. 150A, § 3 (which permits nonpublic employees to engage in concerted activities), applies, and, thus, under the common law a strike by bus drivers may be enjoined in a direct action by affected private persons. We reject the claim that the combining of an employer who would be governed by G. L. c. 150A, if it were the sole employer, and a public employer who would be governed by G. L. c. 150E, if it were the sole employer, results in regulation by neither statute. The dual employer status stipulated as a fact in *Wheaton College* v. *Labor Relations Comm'n,* 352 Mass. 731, 733, 737 (1967), involved one nonprofit employer which, unlike either putative joint employer in the case before us, was by itself subject to neither G. L. c. 150A nor any similar law regulating its labor relations. Whatever role the concept of joint employer may have under G. L. c. 150E, § 9A, where one joint employer is a public employer, the concept would not justify the elimination of statutory regulation in the way asserted by the plaintiffs, the school committee, and the bus companies.

We need not answer the second and third questions. Our negative answer to question 1 — denying the plaintiffs in this action standing to seek injunctive relief against the strike — is dispositive of the question before the single justice and requires that an order be entered vacating the preliminary injunction. We wish to emphasize, however, that what we say in no way restricts the authority of the Superior Court to enter

injunctions concerning the conduct of proper picketing and other matters involving compliance with the laws of the Commonwealth.