MASSACHUSETTS BAY TRANSPORTATION AUTHORITY *vs.* LABOR RELATIONS COMMISSION & others.

Suffolk. December 4, 1969. — January 2, 1970.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, & QUIRICO, JJ.

*Labor. Massachusetts Bay Transportation Authority. Public Employment. Public Agency. Jurisdiction,* Labor. *Prohibition, Writ of.*

A writ of prohibition is an appropriate method of determining whether a quasi judicial body has certain jurisdiction and, if not, of preventing such body from exercising it. [564]

Discussion of statutes bearing on the question whether the Labor Relations Commission has jurisdiction of a certification proceeding under G. L. c. 150A, § 5 (c), affecting employees of the Massachusetts Bay Transportation Authority. [565–568]

The Labor Relations Commission does not have jurisdiction of a certification proceeding under G. L. c. 150A, § 5 (c), affecting employees of the Massachusetts Bay Transportation Authority. [568]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on February 24, 1969.

The case was reserved and reported by *Spiegel, J.*

*William F. Joy (Kevin B. Callanan* with him) for the petitioner.

*James J. Cody, Jr. (Ellsworth T. Johnson* with him) for the Labor Relations Commission.

*Warren H. Pyle* for the interveners.

CUTTER, J. This is a petition in the county court by the Authority (MBTA) for a writ of prohibition to prevent the Labor Relations Commission from acting further in a proceeding (Case No. CR 3184) by the Office and Professional Employees International Union (the union). In that proceeding the union seeks certification under G. L. c. 150A, § 5 (c), as representative for collective bargaining of all of MBTA's approximately 300 monthly payroll employees (excluding executive payroll employees). MBTA appeared before the Commission to contest its jurisdiction and filed a motion to dismiss the petition for certification. On December 23, 1968, this motion was denied and the Commission assigned the case for hearing.

The Commission in the county court filed a demurrer and answer. The facts stated above are admitted in the answer. The demurrer raises the questions (a) whether a writ of prohibition is an appropriate remedy, and (b) whether the Commission has jurisdiction of a certification proceeding affecting employees of MBTA.[1]

A single justice reserved and reported the case for the decision of the full court upon the pleadings and a stipulation concerning certain papers filed before the Commission. Officers of the union were permitted to intervene by the full court.

1. A writ of prohibition is an appropriate method of preventing a quasi judicial body from exercising a jurisdiction which it does not possess and of determining whether jurisdiction exists. *Hathaway Bakeries, Inc.* v. *Labor Relations Commn.* 316 Mass. 136, 139, 141–143. *Wheaton College* v. *Labor Relations Commn.* 352 Mass. 731, 732–734. See *Memorial Hosp.* v. *Labor Relations Commn.* 351 Mass. 643, 644, 647. The writ (see the *Hathaway Bakeries, Inc.* case, at p. 139), of course, is not to be used to correct errors committed by such a tribunal if it has jurisdiction. "[I]ts

---

[1] The petition alleges and the Commission's answer admits that the Commission in the past has construed G. L. c. 150A, and especially § 2 (2), as permitting the Commission "to investigate petitions" relating to employees of MBTA and to certify bargaining representatives.

[only] function is to prevent the . . . [tribunal] from proceeding to a decision when . . . [it] has no power to make any decision."

2. Whether the Commission has jurisdiction in the present case depends on interpretation of several statutes. The first of these, G. L. c. 161A, § 2 (inserted by St. 1964, c. 563), established MBTA as "a body politic and corporate and a political subdivision of the [C]ommonwealth." MBTA's employees have been held to be public employees. *Hansen* v. *Commonwealth*, 344 Mass. 214, 218–219. Under c. 161A, § 19, MBTA's directors are given "authority to bargain collectively with labor organizations representing employees . . . and to enter into agreements with such organizations relative to wages, salaries, hours, working conditions, health benefits, pensions and retirement allowances of such employees. [A] The employees of the authority *shall submit all grievances and disputes pursuant to arbitration provisions in agreements* existing at the time of the creation of the authority or subsequently entered into with the authority, or, in the absence of such provisions, to the [B] *state board of conciliation and arbitration, or other board or body having similar powers and duties.* The provisions of [C] general or special laws relative to *rates* of wages, *hours* of employment and *working conditions* of public employees and relating to contracts for public works, shall not apply to the authority nor to the employees thereof, nor to employees of contractors with the authority but [D] the authority and its employees shall be governed with respect to *hours* of employment, *rates* of wages, salaries, hours, working conditions, health benefits, pensions and retirement allowances of its employees and [E] with respect to contracts for construction, maintenance and repair [F] by the laws relating to street railways" (emphasis supplied).[2]

These provisions of c. 161A must be compared with the State Labor Relations Law found in G. L. c. 150A. Sec-

---

[2] Each letter in brackets in the text of § 19 has been included for convenient reference to the material immediately following such letter.

tion 2 (2)[3] of c. 150A since 1937 (see St. 1937, c. 436, and St. 1938, c. 345) has exempted the Commonwealth and its political subdivisions from the definition of "employer," although G. L. c. 149, § 178F,[4] in subsections (3), (4), and (10), permits recourse to the State Labor Relations Commission by State employees in specified circumstances. Chapter 150A has not permitted such recourse by employees of "political subdivision[s]," except as that has been done with respect to certain employees of any "[m]unicipal employer." See G. L. c. 149, § 178G (as amended through St. 1966, c. 156). See *City Manager of Medford* v. *State Labor Relations Commn.* 353 Mass. 519, 520. MBTA, however, does not seem to us to be a "district" within the definition in § 178G of "[m]unicipal employer" as "any county, city, town or district, and any person designated by the municipal employer to act in its interest." The Commission and the interveners do not appear to rely upon § 178G, and do not mention the section in their briefs.

Chapter 161A, § 19, quoted above, must be examined in detail. Although MBTA's directors are permitted to engage in collective bargaining with labor organizations, its employees (see point [A] in § 19 as already quoted) are to submit all disputes to arbitration under the provisions of

---

[3] As amended through St. 1968, c. 513, § 3, c. 150A, § 2 (2), reads: "The term 'employer' includes any person acting in the interest of an employer, directly or indirectly, and shall include any health care facility, and any nonprofit institution, but *shall not include the commonwealth or political subdivision thereof*, except in the case of a health care facility, or any labor organization, other than when acting as an employer, or anyone acting in the capacity of officer or agent of such labor organization" (emphasis supplied).

[4] General Laws c. 149, § 178D (as amended through St. 1962, c. 504), reads, in part: "Employees of the commonwealth *or any political subdivision* thereof shall have the right to form and join vocational or labor organizations and to present proposals relative to salaries and other conditions of employment through representatives of their own choosing. No such employee shall be discharged or discriminated against because of his exercise of such right . . ." (emphasis supplied). Section 178D is to be compared with § 178F (as amended through St. 1967, c. 774) which appears to relate only (a) to an "[e]mployee," defined in § 178F as "any employee of the commonwealth assigned to work in any department, board, commission or other agency thereof" with exceptions not now pertinent, and (b) to the term "[e]mployer" defined as "the commonwealth, acting through a department or agency head . . . ." There is no evidence in § 178F of intention to have the section apply to "political subdivision[s]" of the Commonwealth as in § 178D.

whatever agreements may exist, and, if there are no applicable provisions (see points [A] and [B] in § 19), then to the State Board of Conciliation and Arbitration existing under G. L. c. 23, § 7.[5] This board is different from the Labor Relations Commission, which exists under c. 23, § 9O (inserted by St. 1938, c. 345, § 1).[6] Although both the Board (fn. 5) and the Commission (fn. 6) act on labor questions, we think that the Commission (see c. 161A, § 19, at point [B], as quoted above) cannot be said under § 19 to be an organization within the language, "other board or body having similar powers or duties" to the State Board of Conciliation and Arbitration. The State board is a mediating body. The Commission has specified statutory duties largely of an investigatory and quasi-judicial character.

A later provision of c. 161A, § 19 (see point [C] in § 19 as quoted) exempts MBTA and the employees from statutes relating (a) to hours of employment, wage rates, and working conditions of public employees, and (b) to contracts for public works. Doubtless, because of this exemption, MBTA and its employees (see point [D] in § 19) are stated to be governed with respect to such matters, under the statutes "relating to street railways" (see points [E] and [F] in § 19 as quoted). This general provision, in context, cannot reasonably be interpreted as intended to subject MBTA and its employees to the Commission's jurisdiction. The provision appears to be designed only to make applicable to MBTA statutory provisions directly relating to street railways so far as they govern the matters specified

---

[5] Section 7 reads in part: "The associate commissioners shall constitute the board of conciliation and arbitration, and shall have the powers and perform the duties given them by . . . [c. 150] relative to conciliation and arbitration of industrial disputes, and . . . [c. 151] relative to the minimum wage. . . ."

[6] Subsection (a) of § 9O reads, in part: "There shall be in the department [Department of Labor and Industries], but in no respect subject to the jurisdiction thereof, a commission to be known as the Labor Relations Commission . . . which shall be composed of three members who shall be appointed by the governor, by and with the advice and consent of the executive council."

in § 19.  See e.g. G. L. c. 161, § 91A (specifying the number of guards per train), and § 103 (requiring that street railroad employees shall not work more than nine hours each day).

MBTA points out also that by St. 1962, c. 760, § 1, certain provisions of the State Labor Relations Law (G. L. c. 150A) were made applicable to (and the State Labor Relations Commission was given, in effect, some jurisdiction over) certain other Authorities, viz. Massachusetts Turnpike Authority (St. 1952, c. 354, § 3); Massachusetts Port Authority (St. 1956, c. 465, § 2); Massachusetts Parking Authority (St. 1958, c. 606, § 3); and Woods Hole, Martha's Vineyard and Nantucket Steamship Authority (St. 1960, c. 701, § 3).  By contrast, there is no reference in G. L. c. 161A, § 19, to the State Labor Relations Commission. MBTA, of course, is a "political subdivision" of the Commonwealth.  On the other hand, no one of the authorities mentioned in St. 1962, c. 760, § 1 (although each is referred to as a "public instrumentality") is designated as such a subdivision in the statute, cited above, creating it.  The absence of legislation expressly making MBTA (when it was created in 1964) subject to the Commission's jurisdiction, and the express provisions of St. 1962, c. 760, § 1, making c. 150A applicable to the other authorities, seem to us significant.

The statutes which have been mentioned above convince us that the Legislature has not placed MBTA, as a political subdivision of the Commonwealth, within the Commission's jurisdiction.  As the statutes now stand we conclude that the Commission is without jurisdiction.

*Writ to issue.*