Massachusetts Bay Transp. Auth. *v.* Massachusetts Bay Transportation Authority Retirement Bd.

MASSACHUSETTS BAY TRANSPORTATION AUTHORITY *vs.*
MASSACHUSETTS BAY TRANSPORTATION AUTHORITY
RETIREMENT BOARD & others.[1]

Suffolk. February 6, 1986. — June 12, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Retirement. Massachusetts Bay Transportation Authority,* Retirement. *Commonwealth,* Officers and employees. *Public Employment,* Suspension, Termination, Misconduct, Forfeiture of retirement benefits.

Employees of the Massachusetts Bay Transportation Authority are subject to G. L. c. 30, § 59, a statute applicable to any public employee who is indicted for misconduct in office. [737]

Provisions of G. L. c. 30, § 59, precluding the payment of retirement benefits to any public employee who retires while under suspension following indictment for misconduct in office, had no application to the case of six employees of the Massachusetts Bay Transportation Authority who were suspended prior to their indictment on charges of larceny from the authority, and who were granted retirement benefits, not while the suspensions were in effect, but after being discharged from employment with the authority. [737-740]

A claim by the Massachusetts Bay Transportation Authority for restitution of funds stolen by six of its retired employees was premature, where the amount sought to be set off against the employees' retirement payments had not yet been certified by the authority to the Massachusetts Bay Transportation Authority Retirement Board in accordance with governing provisions of a collectively bargained pension agreement. [741-742]

CIVIL ACTION commenced in the Superior Court Department on September 26, 1984.

The case was heard by *William G. Young,* J., on a motion for summary judgment.

[1] Local 589, Amalgamated Transit Union, AFL-CIO, James L. Conley, Jr., Louis J. Forte, Roland T. Bergquist, Arthur R. McMillan, Royal H. Randall, and John R. O'Neill.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Carol A. Buckley (Darryl A. Mayers* with her) for the plaintiff.

*Gordon T. Walker (Paul W. Finnegan & John Traficonte* with him) for Massachusetts Bay Transportation Authority Retirement Board.

HENNESSEY, C.J. The outcome of this appeal depends upon our interpretation of the "Perry Law," G. L. c. 30, § 59 (1984 ed.),[2] which allows for the suspension of a Commonwealth employee who is indicted for misconduct in office, provides

---

[2] General Laws c. 30, § 59, provides, in relevant part: "An officer or employee of the commonwealth, or of any department, board, commission or agency thereof, or of any authority created by the general court, may, during any period such officer or employee is under indictment for misconduct in such office or employment or for misconduct in any elective or appointive public office, trust or employment at any time held by him, if he was appointed by the governor, be suspended by the governor, whether or not such appointment was subject to the advice and consent of the council or, if he was appointed by some other appointing authority, be suspended by such authority, whether or not such appointment was subject to approval in any manner. Notice of said suspension shall be given in writing and delivered in hand to said person or his attorney, or sent by registered mail to said person at his residence, his place of business, or the office or place of employment from which he is being suspended. Such notice so given and delivered or sent shall automatically suspend the authority of said person to perform the duties of his office or employment until he is notified in like manner that his suspension is removed. A copy of any such notice together with an affidavit of service shall be filed with the state secretary.

"Any person so suspended shall not receive any compensation or salary during the period of such suspension, nor shall the period of his suspension be counted in computing his sick leave or vacation benefits or seniority rights, nor shall any person who retires from service while under such suspension be entitled to any pension or retirement benefits, notwithstanding any contrary provisions of law, but all contributions paid by him into a retirement fund, if any, shall be returned to him.

" . . . .

"If the criminal proceedings against the person suspended are terminated without a finding or verdict of guilty on any of the charges on which he was indicted, his suspension shall be forthwith removed, and he shall receive all compensation or salary due him for the period of his suspension, and the time of his suspension shall count in determining sick leave, vacation, seniority and other rights, and shall be counted as creditable service for purposes of retirement."

that no compensation shall be paid to such an employee during the period of his suspension, and precludes the payment of retirement benefits to an employee who retires while under such suspension.

On May 24, 1984, thirty-four employees of the Massachusetts Bay Transportation Authority (MBTA), assigned to the MBTA money room, were arrested and subsequently indicted by a Suffolk County grand jury for larceny of MBTA property in excess of $100. On the date of their arrests, these employees were suspended from their jobs for dishonesty, criminal offenses not necessarily involving judicial determination, and theft. On August 24, 1984, the employees were discharged from their employment by the MBTA.

During the period of their suspension, six of these MBTA employees filed applications for retirement benefits with the Massachusetts Bay Transportation Authority Retirement Board (board). Each of these six employees had completed at least twenty-three years of service with the MBTA — the prerequisite to early retirement under the pension agreement between Local 589 of the Amalgamated Transit Union and the employer.[3] On September 13, 1984, after the six employees had been formally discharged from their employment, the board voted to grant them retirement benefits, "subject to the certified claims of the MBTA for unpaid debts."

The MBTA then commenced the present action in the Superior Court, alleging that the vote of the board was unlawful. The MBTA sought a declaration that the six employees were disqualified by G. L. c. 30, § 59, from receiving retirement benefits, and an order restraining the board from returning the employees' retirement fund contributions until restitution had been paid to the MBTA for sums allegedly stolen. The parties submitted a statement of agreed facts, and the MBTA

---

[3] Article IV (1) (c) of the pension agreement provides in relevant part: "Any employee in service who has not reached his normal retirement date, but who has completed at least twenty-three (23) years of creditable service, may be retired by the Retirement Board on an early normal retirement allowance on the first day of the calendar month coincident with or next following such date."

397 Mass. 734                                                737

Massachusetts Bay Transp. Auth. *v.* Massachusetts Bay Transportation Authority Retirement Bd.

moved for summary judgment. The Superior Court judge ordered judgment for the board, declaring that the provisions of G. L. c. 30, § 59, do not operate to disqualify employees from receiving retirement benefits after the period of their suspension has ended; that the vote of the board granting these employees retirement benefits was in full force and effect; and that the board has discretion, but is not required, to satisfy the unpaid debts of the retirees prior to paying their pension benefits. The MBTA appealed. We transferred the case here on our own motion and now affirm.

1. *Retirement Benefits.*

The trial judge properly determined that MBTA employees are subject to the provisions of G. L. c. 30, § 59. This statute applies to any "officer or employee of the commonwealth" who is indicted for misconduct in office. The fact that MBTA employees are "employee[s] of the commonwealth" is beyond dispute. "The MBTA is a 'body politic . . . and a political subdivision of the commonwealth.' G. L. c. 161A, § 2 (1984 ed.). The MBTA is within the Executive Office of Transportation and Construction. G. L. c. 6A, § 19 (1984 ed.)." *Appley* v. *Locke*, 396 Mass. 540, 547 (1986). Its employees are properly considered public employees subject to G. L. c. 30, § 59. See *Massachusetts Bay Transp. Auth.* v. *Labor Relations Comm'n*, 356 Mass. 563, 565 (1970); *Dullea* v. *Massachusetts Bay Transp. Auth.*, 12 Mass. App. Ct. 82, 90 (1981).[4]

We turn now to the effect of G. L. c. 30, § 59, on the employees' retirement benefits.[5] The judge ruled that the em-

---

[4] The board argues that, even if MBTA employees may properly be considered "employee[s] of the commonwealth," they are exempted from the provisions of G. L. c. 30, § 59, by virtue of G. L. c. 161A, § 19 (1984 ed.), which provides that " [t]he provisions of general or special laws relative to "rates of wages", hours of employment and working conditions of public employees, shall not apply to the authority nor to the employees thereof." General Laws c. 30, § 59, is not a law relative to the "rates of wages" of public employees (emphasis added). The statute regulates the payment of wages only as an incident to its main purpose of providing for the suspension of public employees.

[5] The first sentence of G. L. c. 30, § 59, provides for the suspension of a public employee who is "under indictment" for misconduct in office. In

ployees were properly granted retirement benefits, because G. L. c. 30, § 59, operates to disqualify employees only during the period of their suspension. Because the board voted to grant the employees retirement benefits *after* they had been discharged, the statute did not affect their pension rights. We agree with this construction. The clear language of the statute precludes payment of retirement benefits only to those employees who retire "while under . . . suspension." Where the language of a statute is plain, there is no room for speculation as to its meaning. *Condon* v. *Haitsma*, 325 Mass. 371, 373 (1950). See *Bronstein* v. *Prudential Ins. Co.*, 390 Mass. 701, 704 (1984). These six employees retired after they had been discharged, and not "while under . . . suspension."[6] General Laws c. 30, § 59, is limited by its terms to the period of suspension: once the suspension has ended,[7] the statute is no

this case, the six employees were suspended from their jobs on the date of their arrests (May 24, 1984) and prior to their indictments (June 19, 1984). Arguably, the employees were not suspended in accordance with G. L. c. 30, § 59, and therefore the statute's provisions regarding retirement benefits do not apply to them.

No party raises this issue. If accepted, this premise would be a further basis for affirming the trial judge's decision that G. L. c. 30, § 59, does not preclude the retirement board from granting these employees benefits.

[6] The MBTA argues that the employees should be considered to have "retired" as of the date that they filed their applications for retirement benefits, and because they filed their applications "while under . . . suspension," they should be precluded from receiving benefits under G. L. c. 30, § 59. We disagree. An employee has not "retired" until affirmative action has been taken by the board on his application. See *Brown* v. *Taunton*, 16 Mass. App. Ct. 614, 619 n.6 (1983). Article IV, § (1) (c), of the pension agreement provides that "[a]ny employee . . . who has completed at least twenty-three (23) years of creditable service, may be retired by the Retirement Board." When the board convened to consider the employees' retirement applications in September, 1984, the applicants had been discharged from their employment, and therefore nothing in G. L. c. 30, § 59, precluded the board from granting them benefits.

[7] The MBTA argues that an employee's suspension has not ended for the purposes of G. L. c. 30, § 59, until the criminal proceeding against him has terminated in his favor. We disagree. The statute merely provides that an employee's suspension "shall be forthwith removed" once the criminal action has "terminated without a finding or verdict of guilty." This does not imply that the *only* condition upon which a suspension shall be removed is the favorable termination of the criminal proceeding. See *Caples* v.

longer applicable. See *Brown* v. *Taunton*, 16 Mass. App. Ct. 614, 619 (1983) (public employee whose term of office expired during suspension not precluded by G. L. c. 268A, § 25 [1984 ed.], from receiving retirement benefits).[8] Nothing in G. L. c. 30, § 59, precluded the board from granting the employees retirement benefits after they had been discharged.[9]

This result is consistent with the obvious purpose of G. L. c. 30, § 59. The purpose of the statute is to remedy the untenable situation which arises when a person who has been indicted for misconduct in office continues to perform his public duties while awaiting trial. *Reynolds* v. *Commissioner of Commerce & Dev.*, 350 Mass. 193, 194 (1966). *Bessette* v. *Commissioner of Pub. Works*, 348 Mass. 605, 609 (1965). The statute addresses this problem by allowing for the temporary removal of such employees from office, and by precluding the payment of compensation and the awarding of retirement benfits during the period of their suspension. The narrow focus of the statute is on the *suspension* of a public employee indicted for misconduct in office — it makes no provision for the consequences of discharge or conviction.

Of course, there are laws of the Commonwealth which preclude the payment of retirement benefits to certain public employees who are discharged or convicted for misconduct in office. See G. L. c. 32, § 10 (1) (1984 ed.) (forfeiture of retirement benefits where discharged for moral turpitude); G. L. c. 32, § 10 (2) (*c*) (1984 ed.) (forfeiture of retirement

---

*Secretary of the Commonwealth*, 350 Mass. 638 (1966) (suspension under G. L. c. 30, § 59, terminated upon resignation of the officer). Obviously, when an employee has been discharged from his employment, his temporary suspension from that position has ended.

[8] General Laws c. 268A, § 25, which applies to county, municipal, and district officers, is identical in its operative language to G. L. c. 30, § 59, which applies to officers and employees of the Commonwealth.

[9] The judge was correct in concluding that the board could lawfully grant retirement benefits to these employees after they had been discharged from their employment. In its vote of September 13, 1984, however, the board voted to grant the six employees retirement benefits retroactive to June 1, July 1, and August 1, 1984. The judge's ruling, which we affirm, would modify this result by granting the employees retirement benefits as of the date of their discharge, August 24, 1984.

allowance where discharged for violation of laws, rules, and regulations applicable to office or position); G. L. c. 32, § 15 (3) (1984 ed.) (forfeiture of retirement benefits upon conviction of misappropriation of funds unless full restitution made); G. L. c. 32, § 15 (3A) (1984 ed.) (forfeiture of retirement benefits upon conviction under G. L. c. 268A, § 2 [1984 ed.] [public corruption], or G. L. c. 265, § 25 [1984 ed.] [extortion]). See also *Collatos* v. *Boston Retirement Bd.*, 396 Mass. 684 (1986). However, the Legislature has expressly exempted the MBTA pension system from the provisions of G. L. c. 32. See St. 1964, c. 563, § 19.[10] The fact that MBTA employees, whether through legislative oversight or inadvertence, are not subject to the forfeiture provisions of G. L. c. 32, §§ 10, 15, does not justify stretching the words of G. L. c. 30, § 59, in order to accomplish a result not expressed or intended by that statute.

While it may be unfortunate that employees who have acted so reprehensibly should be awarded retirement benefits, the fact that these six employees were faithless to their employer, and to the public trust vested in them, does not relieve this court of its duty to be faithful to the words of the statute. It is the function of this court to construe G. L. c. 30, § 59, as written, and an event or contingency for which no provision has been made does not justify judicial legislation. *Prudential Ins. Co.* v. *Boston*, 369 Mass. 542, 547 (1976). *First Nat'l Bank* v. *Judge Baker Guidance Center*, 13 Mass. App. Ct. 144, 151 (1982). See *Collatos, supra* at 688.

---

[10] Statute 1964, c. 563, § 19, provides in relevant part: "Chapter thirty-two of the General Laws shall not apply to any retirement or pension system of the Massachusetts Bay Transportation Authority, but the directors shall continue payment of pensions and retirement allowances under and in accordance with the present pension plan and authorizations of the board of trustees of the Metropolitan Transit Authority, as from time to time modified by the directors."

We presume that, but for the operation of St. 1964, c. 563, § 19, the employees would be held to have forfeited their retirement benefits under G. L. c. 32, § 15 (3). We take notice of the fact that these six employees pleaded guilty to larceny over $100, and were sentenced in the Superior Court.

2. *Restitution.*

The board voted to grant the employees retirement benefits subject to "the certified claims of the MBTA for unpaid debts."[11] In its subsequent action for declaratory relief, the MBTA sought an injunction restraining the board from paying over these benefits until restitution had been paid to the MBTA for sums allegedly stolen. The judge declined to grant such an injunction. We affirm.

As we have already determined, MBTA employees are not subject to G. L. c. 32. The restitution provisions of G. L. c. 32, § 15 (1984 ed.), which require that the payment of benefits or the return of contributions be "set off" by the amount of misappropriated funds,. are thus inapplicable to these six employees. In addressing the MBTA's claim to restitution, we thus must look to the collectively bargained pension agreement between the MBTA and its employees.

Article IX of the pension agreement provides that, "upon written certification to the Retirement Board by the Authority that the member or retired member has failed to make settlement with the Authority for unpaid debts, the Retirement Board *may* deduct from his benefit payments or return of contributions and pay to the Authority and/or the union the sum necessary to discharge such indebtedness" (emphasis added). The judge declined to grant the injunction, interpreting the pension agreement to vest the board with discretion on the question whether or not to "set off" the amounts misappropriated against the employees' retirement benefits.

We need not decide whether the board has discretion in this regard, because we determine that the MBTA's claim to restitution is premature. Under the pension agreement, the board is not empowered to withhold benefit payments until a certified claim of debt has been submitted to it by the MBTA. As of this writing, no such debt has been established. The MBTA has commenced a civil suit against the employees for conversion. This suit is now pending in the Superior Court. When

---

[11] The board voted to hold the retirement benefits in escrow until November 24, 1984. From all that appears before us, we presume that the employees are now receiving their monthly benefits from the pension fund.

and if this action terminates in a judgment favorable to the MBTA, a debt will have been established against one or more of .the employees. At that time, the MBTA may submit a certified claim of debt to the board and request that the debt be satisfied out of the retirement benefits of the employees. Only then will the issues related to restitution be ripe for consideration, including the issue whether, in the circumstances of this case, public policy would preclude a determination by the board that it has discretion to decline to satisfy an established MBTA claim for restitution out of retirement benefits.

3. *Conclusion.*

Most public employees convicted of crimes in office like those shown in this case must, under the terms of G. L. c. 32, lose their retirement benefits. However, G. L. c. 32 clearly does not apply to MBTA employees. The result we reach here may not even have been contemplated by the Legislature, but it is required by the clear statutory language.

*Judgment affirmed.*