Botsford, J.
Introduction
At issue in this case is the authority of the Labor Relations Commission (the commission) under G.L.c. 161A, §19A, to consider a representation petition of a union seeking to become the collective bargaining representative for certain employees of the Massachusetts Bay Transportation Authority (MBTA). Presently before the court is a motion for summary judgment of the MBTA in which it seeks a declaration that as a matter of law the Commission is without jurisdiction to entertain the representation petition. The defendants, the commission and the Office and Professional International Union, Local 453 (the union), oppose the motion, arguing that the commission’s jurisdiction is clear. For the reasons discussed below, the MBTA’s motion for summary judgment is allowed.
Background
Procedural history. On August 30, 1994, the union filed a representation petition with the commission under G.L.c. 150A, §5, in which it sought certification to represent a bargaining unit of lieutenants and captains of the MBTA police department (superior officers) for purposes of collective bargaining. The MBTA moved to dismiss the petition, arguing that the commission did not have jurisdiction because the superior officers were on the MBTA’s executive payroll, and therefore excluded from collective bargaining as “executives” under G.L.c. 161A, §19A.[2]
The MBTA thereafter filed the present declaratoiy judgment action requesting that the court determine the commission was without jurisdiction or authority to entertain the representation petition under G.L.c. 161A, §19A. In July 1995 the commission moved to dismiss this action on the grounds that the MBTA had failed to exhaust its administrative remedies, since the commission had not yet ruled on the motion to dismiss filed with the commission. Further proceedings in this case were stayed until September 6, 1995.
On August 29, 1995, the commission denied the MBTA’s motion to dismiss the union’s superior officers representation petition.[3] In September 1995 the parties agreed to proceed with this declaratoiy judgment action in order to resolve the jurisdictional issue. The parties further agreed that the action could be resolved by summaiy judgment since there were no facts in dispute. Pursuant to that agreement, the MBTA has filed the present motion for summary judgment. The defendants oppose the motion on its merits, arguing in effect that as matter of law summary judgment should enter against the MBTA.
Facts. The MBTA was established in 1964 by the Legislature as a “body politic and corporate and a political subdivision of the commonwealth.” G.L.c. 161A, §2. A board of directors of seven members manages the MBTA. All directors are appointed by the Governor; the Secretary of Transportation serves as the chair of the board.
The MBTA has created three categories of employees; those on the weekly payroll (approximately 6,000 employees); those on the monthly payroll (approximately 349 employees); and those on the executive payroll (approximately 530 employees). These categories have been established for more than 25 years. The numbers of employees in each category has varied.
The superior officers have been placed on the executive payroll and categorized as “executives” since 1987 (for captains) and 1988 (for lieutenants). As executives, the superior officers have greater responsibilities than nonexecutive employees. They also are entitled to higher salaries than nonexecutives and enjoy additional employment-related benefits, including a deferred compensation and insurance benefit program. The lieutenants and captains voluntarily opted to change from their previously “unaffiliated” status to become executives.[4]
Discussion
At the center of this case is G.L.c. 161A, §19A (§19A), which provides in relevant part:
Notwithstanding any provisions of law to the contrary, the provisions of section 5 of chapter 150A[5] shall so far as apt apply to the [MBTA] and its employees, excepting directors, executives and those confidential employees representing the [MBTA] and dealing with employee organizations
The parties dispute the meaning of this statute, and more particularly the meaning of the term “execu- *363 lives.” The MBTA argues that the word “executives” refers to those employees which the MBTA has placed on its executive payroll, and that accordingly, it is the MBTA which has the sole authority to determine who comes within the category. Thus, the MBTA contends that the commission does not have jurisdiction to determine whether or not a particular person qualifies as an “executive.” The commission and the union state that the term “executive" must be interpreted more generally, and that consistent with its power to determine appropriate bargaining units under G.L.c. 150A, §5, the commission is the agency responsible for determining factually, on a case-by-case basis, whether a particular employee or group of employees are properly classified as “executives.”[6]
The word “executives” is not defined in §19A, and, as just indicated, there is a dispute between the parties over how it should be interpreted. “Where there exists an ambiguity in statutory language, we will examine the historical and legal environment in which the statute was enacted to discern the objectives which the Legislature expected the law to achieve.” International Org. of Masters, Mates & Pilots v. Woods Hole, Martha’s Vineyard and Nantucket S.S. Authy., 392 Mass. 811, 815 (1984). See id. at 813 (“[t]heintent of the Legislature is to be determined primarily from the words of the statute, given their natural import in common and approved usage, and with reference to the conditions existing at the time of enactment. . .”).
As all parties recognize, §19A was enacted in July 1970 in response to a decision of the Supreme Judicial Court in Massachusetts Bay Transportation Authy. v. Labor Relations Comm’n, 356 Mass. 563 (1970). That case involved a representation petition brought before the commission by the same union as in this case; the bargaining unit the union sought to have certified consisted of “(a]ll monthly payroll employees [of the MBTA] excluding Executive payroll employees.”[7] The MBTA moved to dismiss the petition before the commission on grounds of lack of jurisdiction; as in this case, the commission denied the motion. The MBTA then filed a writ of prohibition in the Supreme Judicial Court to bar the commission from proceeding further in its investigation of the union’s petition. In its decision, the court ruled that the commission lacked jurisdiction to entertain the representation petition. It based the decision on its analysis of the applicable labor relations laws and the MBTA’s governing statute. Specifically; the court concluded that neither the State Labor Relations Act, G.L.c. 150A, nor any other statute gave the commission jurisdiction over the MBTA, and therefore the commission could not proceed with its consideration of the union’s representation petition.
The court’s decision was issued on January 2, 1970. Within seven months, at the behest of the union, the Legislature enacted (with an emergency preamble) §19A, which specifically conferred jurisdiction on the commission to determine appropriate collective bargaining units of and to certify union representatives for MBTA employees “excepting directors, executives” and certain confidential employees. It appears that the MBTA did not oppose the legislation.[8]
This history of §19A supports the MBTA’s view that the statute’s reference to “executives” was intended to exempt those on the MBTA’s executive payroll from the commission’s jurisdiction, rather than, as the commission and union argue, to exempt those whom the commission, after investigation and hearing, would define by function as managerial or executive employees. At the time § 19A was enacted, the MBTA had the same three categories of employees as it does today: weekly payroll, monthly payroll and executive payroll. As the history summarized above indicates, the union was seeking to represent a bargaining unit which would consist of monthly payroll employees and expressly exclude executive payroll employees. When the Supreme Judicial Court determined that the commission had no jurisdiction over the monthly payroll employees because of the particular history of the MBTA,[9] it is reasonable to read the words of §19A as seeking to correct this particular problem — that is, the principal goal of the statute was to make clear that MBTA employees not on the executive payroll could seek to form collective bargaining units under the auspices of the commission.[10]
Moreover, this reading of §19A is also supported by the commission’s own historical interpretation of the statute. Approximately one month after the passage of §19A, on August 19, 1970, the union again filed a representation petition with the commission to become the collective bargaining representative for “all monthly payroll employees excluding directors, executives and those confidential employees representing the Authority and dealing with employee organizations.” Massachusetts Bay Transportation Authority, Case No. CR-3270, Decision (October 16, 1972), slip op. at 1. At the time, the monthly payroll had approximately 349 employees on it, id., slip op. at 2, and included within the group were a variety of professional persons; lawyers, nurses, engineers, accountants, computer operators, writers, and planners. Id. The MBTA argued that the proposed bargaining unit of monthly payroll employees included persons who were excluded by virtue of §19A, contending that the statutory exception for “executives” and “confidential employees” should be read expansively to include any persons — regardless of what payroll group they were in — who had managerial or supervisory duties, and anyone with access to confidential information. Id., slip op. at 2, 5.
The commission disagreed, reasoning that as a general matter, employees performing supervisory or management functions are not necessarily precluded from collective bargaining, nor does access to confidential information, without more, turn an employee into a “confidential employee.” See id., slip op. at 6-8. *364 The commission then went on specifically to discuss its interpretation of the scope of the exception in §19A for “executives”:
We have researched the judicial history of . . . [§]19A and conclude that tifie word “Executives” as used in the language of the aforementioned statute shall mean those persons who have been afforded that designation by the Authority itself and who are on the Executive Payroll and not the Monthly Payroll. The Executive Payroll was created by the Employer in 1967. The Statute, ...[§] 19A, was enacted in 1970 as a direct result of the decision of the Supreme Judicial Court in the case of Massachusetts Bay Transportation Authority v. Labor Relations Commission, 356 Mass. 563. In that case, the same Union which is presently before us sought certification as the bargaining representative for this same unit of [MBTA] Monthly Payroll employees. The Supreme Judicial Court ruled that the Labor Relations Commission had not been granted jurisdiction over the case. As a result of said ruling, Mr. Scalli of Boston . . . filed House Bill H-5557, which on July 8, 1970 was enacted and became Chapter 161 A, [§]19A as we know it today. We believe that its language was drafted with the organizational structure of the Employer at that time in mind. Therefore the exception in the statute for “executives" refers to those whom the employer itself called “executive”, i.e. those on the Executive Payroll
(Emphasis supplied.)
The deference generally accorded an agency’s interpretation of a statute it is responsible for administering is particularly called into play when at stake is a contemporaneous interpretation of the law. See Massachusetts v. Secretary of Health and Human Services, 899 F. 2d 53, 61 (1st Cir. 1990) (agency’s contemporaneous ] construction of statute should be given deference because it is more likely to reflect intent of enacting Congress). See also Udall v. Tallman, 380 U.S. 1, 16 (1964) (respect is particularly due to contemporaneous construction of statute by administrators responsible for putting new statute into effect). The commission’s 1972 reading of §19A appears to be consistent with the legislative history of the statute, and I accept it.[12]
The commission and the union argue that in the general context of representation petitions, the commission historically has made the determination whether particular employees should or should not be included in a proposed bargaining unit, and that §19A should be read against this background. When it is so read, the argument goes, the authority of the commission to determine who, in fact, is an “executive,” “director" or “confidential employee” is clear, because these are simply analogous terms to define categories of employees with which the commission deals all the time in administering the Massachusetts labor relations statutes. I disagree. While the term “confidential employee,” is used and defined in G.L.c. 150E (see §1, “Employee”),[13] the terms ’’executives" and “directors” do not appear in either G.L.c. 150A or c. 150E. Rather, as discussed above, these terms have a particular connection with the MBTA’s own employee organizational structure, and are more appropriately understood in that context.
More generally, the MBTA has a long history of separate treatment from other governmental agencies and authorities insofar as collective bargaining is concerned. See Massachusetts Bay Transportation Authy. v. Labor Relations Comm’n, supra, 356 Mass. at 566-68. Section 19A represents a departure from the separate treatment, but the context in which it was enacted indicates that the departure is a limited one. Cf. International Org. of Masters, Mates & Pilots v. Woods Hole, Martha’s Vineyard and Nantucket S.S. Authy., supra, 392 Mass. at 815-17 (determination of whether steamship authority was required to submit disputes to interest arbitration under a particular statute must be considered against historical background of public employees’ limited collective bargaining rights at time statute was enacted). Although §19A gives the commission the authority to determine whether a specific category of employee should be included in a particular collective bargaining unit in relation to MBTA employees who are not directors or on the executive payroll, its jurisdiction simply does not extend to making such judgments about those on the executive payroll itself.
The union also contends that whatever “executives” may have referred to in 1970 when §19A was enacted, circumstances have changed: in 1970, there were 21 employees on the MBTA’s executive payroll, whereas there are now approximately 533 employees on that payroll; the Legislature could not have intended to exclude such a large group of employees from the ability to organize under the commission’s supervision. However, the fact that the MBTA has greatly expanded the number of employees it categorizes as “executives” does not permit a reading of the statute that ignores its origins and the purposes it was intended to achieve.
It is true that
[statutes framed in general terms commonly look to the future and may include conditions as they arise from time to time not even known at the time of enactment, provided they are fairly within the sweep and the meaning of the words and falling within their obvious scope and purpose.
Hayon v. Coca Cola Bottling Co. of New England, 375 Mass. 644, 649 (1978) (quoting Commonwealth v. Welosky, 276 Mass. 398, 403 (1931), cert. denied, 284 U.S. 684 (1932)). But §19A is not a statute “framed in general terms.” Again it must be stressed that the word “executives” has a meaning specifically linked to the MBTA,[14] and any interpretation must take that connection into account.
*365 In sum, I believe §19A is properly construed in relevant part to limit the commission’s jurisdiction to those MBTA employees who are not on the executive payroll.[15] It is understandably disturbing to the commission and the union, and perhaps to many others as well, that the MBTA should have the unilateral power to determine who will be excluded from the commission’s jurisdiction simply by virtue of its ability to designate particular employees or groups of employees for its executive payroll; the point is made that the MBTA could, theoretically, avoid the jurisdiction of the commission entirely by placing all its employees on that payroll. While this would plainly be an unfortunate development, I am not in a position to ignore the words and history of the statute to avoid it. See Massachusetts Bay Transportation Authy. v. Massachusetts Bay Transportation Authy. Retirement Bd., 397 Mass. 734, 740 (1985) (“[i]t is the function of this court to construe G.L.c. 30, §59 as written, and an event or contingency for which no provision has been made does not justify judicial legislation”); Bronstein v. Prudential Ins. Co. of America, 390 Mass. 701, 706 (1983) (“[w]e have no right to conjecture what the Legislature would have enacted if they had foreseen the occurrence of a case like this . . .”). If the commission is to play a role in determining which of the MBTA employees the MBTA has classified as “executives” are able to participate in collective bargaining units subject to the commission’s certification powers, the change must come from the Legislature. It should not come from the courts.
ORDER
For the foregoing reasons, the MBTA’s motion for summary judgment is allowed. A final judgment is to enter in this case declaring that (1) under G.L.c. 161A, §19A, the Labor Relations Commission is without jurisdiction to determine whether any persons on the executive payroll of the Massachusetts Bay Transportation Authority are properly classified as “executives” and thereby not to be included in any employee collective bargaining unit certified by the Labor Relations Commission; and (2) under G.L.c. 161A, §19A, the MBTA has exclusive authority to determine which of its employees are to be classified as “executives” on the executive payroll.

General Laws c. 161A, §19A (1994 ed.) provides as follows:
Notwithstanding any provisions of law to the contrary, the provisions of section five of chapter 150A shall so far as apt apply to the authority [MBTA] and its employees, excepting directors, executives and those confidential employees representing the authority and dealing with employee organizations. Nothing in this section shall be construed as conferring upon the employees of the authority the right to strike, nor as detracting from the obligations of the authority and the employees to submit all grievances and other disputes to arbitration.
(Emphasis supplied.)

In denying the motion, the commission relied on its decision in a parallel representation case filed by the union in which it sought to represent a bargaining unit composed of attorneys employed in the MBTA’s law department, Massachusetts Bay Transportation Authority, CR-3689 (August 17, 1995).

The information in the two preceding paragraphs in the text is taken from the affidavit of Frank McDonough, director of labor relations for the MBTA. The affidavit was filed in support of the MBTA’s summary judgment motion. No affidavits or other materials have been submitted by any parly which contradict or dispute the facts stated by McDonough.

Section 5 of G.L.c. 150A, the State Labor Relations Act, concerns in pertinent part the role of the commission in determining appropriate collective bargaining units of employees and in investigating representation petitions filed by unions.

There appears to be no dispute that once a group of employees is classified as “executives,” regardless of whether it was the MBTA or the commission which makes the determination, those employees are not able to become part of a collective bargaining unit certified by the commission.

Petition by Employees for Investigation and Certification of Representatives Pursuant to Section 5(c) of the State Labor Relations Law (Chapter 150A of the General Laws), Case No. CR-3184 (filed October 11, 1968), p. 1.

On file in the State Archives is the legislative packet of materials accompanying House Doc. 5557 (1970), which became St. 1970, c._. These materials contain a copy of a letter from an attorney for the MBTA to the then acting governor which provides as follows:
Dear Governor:
I am returning herewith a photostat of House 5557 entitled, “An Act providing that the Massachusetts Bay Transportation Authority and their employees shall be subject to certain provisions of the State Labor Relations Law." House 5557 would in effect give the State Labor Relations Commission jurisdiction over the Authority and its employees in certain matters relative to collective bargaining.
Some months ago, the Office and Professional Employees International Union sought certification under G.L.c. 150A, section 5(c), as representative for collective bargaining of all of the Authority’s 300 monthly payroll management employees. The Authority contested the Commission’s jurisdiction and the matter eventually went to the Supreme Judicial Court. The Court concluded that the State Labor Relations Commission was without jurisdiction. Therefore, union representatives filed Senate 1254 now House 5557 so that said Commission would have such jurisdiction as provided in G.L.c. 150A, section 5. The Authority did attempt to amend the bill by giving the term “confidential employee” a broader meaning. This was not acceptable to labor and therefore rejected.
In conclusion, the Authority does not object to this legislation.

The court in its decision points out that the MBTA is defined in its governing statute, G.L.c. 161A, as a “political subdivision” of the Commonwealth, a categoiy of entity expressly excepted from the definition of “employer” in G.L.c. 150A. The court contrasted the MBTA in this regard with other public authorities like the Massachusetts Turnpike Authority, the Massachusetts Port Authority and the Massachusetts Parking Authority which were not designated as political subdivisions of the commonwealth and which were specifically recognized by statute as being subject to G.L.c. 150A and thereby the commission’s jurisdiction. Massachusetts Bay Transportation Authy. vs. Labor Relations Comm’n, 356 Mass. 563, 566, 568 (1970).

Section 19A carves out of the group of employees over whom the commission has jurisdiction not only “executives” but also “directors” and certain confidential employees representing the MBTA management in connection with collective bargaining. These latter two categories were not mentioned in the union’s 1968 representation petition which became at issue in the Supreme Judicial Court’s 1970 opinion. However, the exemption of the MBTA directors from the commission’s jurisdiction would appear to be a given, since the directors are indisputably at the core of management, and clearly would not be the subject of any representation petition. With respect to confidential employees, nothing in the legislative history of § 19A helps to explain the reason for their listing in the statute.

The commission suggests that its 1972 decision did not define the term “executives” in §19A in relation to the MBTA’s executive payroll, but rather excluded them from coverage under §19A because it determined as a factual matter that they exerted management control over departments of the MBTA. (Commission’s memorandum in opposition to MBTA’s motion for summary judgment, p. 7 n.2.) The commission misreads its 1972 decision. The bargaining unit proposed by the union expressly excluded “executives” and covered only monthly payroll employees. Thus there was no need for the commission to determine whether those on the executive payroll should be exempt. It is clear from the decision that the commission discussed the management responsibilities held by persons on the executive payroll only to contrast them with the lesser level of managerial duties held by certain supervisory employees on the monthly payroll whom the MBTA had argued should also be excluded from the bargaining unit.

General Laws c. 150E is the public employee labor relations statute, enacted in 1973, and it governs the commission’s responsibilities in that arena. The MBTA is specifically excluded from coverage by c. 150E. See id., §1, “Employer.”

The same is true of the word “directors” in §19A. The class of confidential employees described in §19A presumably are not peculiar to the MBTA, but they are not at issue in this case.

Obviously, the commission is also without jurisdiction over the MBTA’s appointed directors and “confidential employees” representing management in collective bargaining matters.