MASSACHUSETTS BAY TRANSPORTATION AUTHORITY *vs.*
LABOR RELATIONS COMMISSION & another.[1]

Suffolk. April 8, 1997. - June 16, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Labor Relations Commission. Massachusetts Bay Transportation Authority,*
Collective bargaining. *Public Employment,* Collective bargaining. *Labor,*
Public employment. *Jurisdiction,* Labor case. *Statute,* Construction.
*Words,* "Executive."

This court concluded that the Labor Relations Commission had authority
to determine in the first instance, subject to judicial review in the usual
course, whether certain employees of the Massachusetts Bay Transporta-
tion Authority (MBTA), having been placed on the MBTA executive
payroll, are executive (managerial) employees exempt from exercising
bargaining rights under G. L. c. 150A, as applied to the MBTA by G. L.
c. 161A, § 19A. [256-261]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 16, 1994.

The case was heard by *Margot Botsford,* J., on a motion for
summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Robert S. Manning* for Office and Professional Employees
International Union, Local 453, AFL-CIO.

*John B. Cochran* for Labor Relations Commission.

*Philip G. Boyle* for Massachusetts Bay Transportation Author-
ity.

FRIED, J. At the suit of the Massachusetts Bay Transporta-
tion Authority (MBTA), a Superior Court judge issued a
declaratory judgment on the MBTA's motion for summary
judgment to the effect that the Labor Relations Commission
(commission) lacks jurisdiction to determine whether certain

[1] Office and Professional Employees International Union, Local 453,
AFL-CIO.

MBTA employees, having been placed on the MBTA executive payroll, are executive employees exempt from exercising bargaining rights under G. L. c. 150A, as applied to the MBTA by G. L. c. 161A, § 19A. We vacate that judgment.

I

The MBTA is established under G. L. c. 161A, § 2, as "a body politic and corporate and a political subdivision of the [C]ommonwealth." MBTA employees have been held to be public employees. *Hansen* v. *Commonwealth*, 344 Mass. 214, 218-219 (1962). General Laws c. 150A (Act), known as the "Baby Wagner Act," *Massachusetts Port Auth.*, CR-2940 (Labor Relations Commission 1965), secures to certain classes of employees not covered by the national labor laws, the benefits of collective bargaining. See G. L. c. 150A, § 1. See also *R.H. White Co.* v. *Murphy*, 310 Mass. 510, 515 (1942). The Act established the commission as an institution, similar to the National Labor Relations Board, to enforce certain of the Act's provisions and to adjudicate disputes arising under it. G. L. c. 150A, § 7. Among its functions, the commission entertains petitions by labor organizations seeking to represent employees in a workplace subject to the commission's jurisdiction. Section 5 (*a*) of G. L. c. 150A states the general rule that the representatives chosen by a majority of the employees "in a unit appropriate for such purposes" shall be the exclusive representatives of the employees in that unit for purposes of collective bargaining. Subsection (*b*) authorizes the commission to determine the appropriate bargaining units. Subsection (*c*) states that "[w]henever a question . . . arises concerning the representation of employees, the commission may investigate such controversy and [after a hearing] certify . . . the representatives who have been selected." Judicial review of such determinations occurs when an affected person or organization petitions for review of a commission order or opposes a petition for enforcement. See G. L. c. 150A, § 6 (*e*) and (*f*). The court on such review may enforce, modify, or set aside the commission's order. See G. L. c. 150A, § 5 (*e*).

This case arises out of a petition to the commission by the Office and Professional Employees International Union, Local 453 (union), in which the union seeks to represent certain superior officers, e.g., lieutenants and captains, of the MBTA police department. The MBTA filed a motion with the commission

asserting that the commission lacks jurisdiction to investigate and decide the representation issues presented by the union's petition. The MBTA's motion was based on the contention that the superior officers had been placed on the MBTA's "executive payroll" and that therefore they were "executives" to whom the provisions of G. L. c. 150A do not apply, by the terms of the statute which placed employees of the MBTA under the jurisdiction of the Act, G. L. c. 161A, § 19A. Section 19A provides:

> "Notwithstanding any provisions of law to the contrary, the provisions of section five of chapter one hundred and fifty A shall so far as apt apply to the authority and its employees, excepting directors, executives and those confidential employees representing the authority and dealing with employee organizations. . . ."

In a parallel case brought by the same union, in which the union sought to represent attorneys at the MBTA, the commission had rejected the MBTA's contention that the attorneys were "executives" for the purposes of the statute solely by reason of the MBTA's including them on the executive payroll. *Massachusetts Bay Transp. Auth.*, 22 M.L.C. 1111 (1995). The commission rejected the MBTA's motion to dismiss in this case on the authority of that decision, which it had announced earlier in the same month. The commission ruled that the proceedings should continue so that it could determine, by an examination of the superior officers' functions, whether these officers, placed by the MBTA on the executive payroll, could properly be designated as executives and thus outside the provisions of the Act. *Massachusetts Bay Transp. Auth.*, 22 M.L.C. 1161 (1995). During the pendency of these proceedings, the MBTA brought an action in the Superior Court seeking a declaration that the commission lacked jurisdiction to determine whether the officers were executives within the meaning of § 19A. The Superior Court action was stayed until the commission itself had ruled on and dismissed the same contention. Thereafter, the Superior Court judge, in an exceptionally careful and closely reasoned opinion examining the texts and legislative history of the relevant statutory provisions, concluded that by reason of § 19A, the commission had no jurisdiction over the union's petition. The

defendants appealed. We transferred the case here on our own motion.

## II

The dispute in this case implicates two questions: whether the superior officers in their bid for unionization are covered by the provisions of G. L. c. 150A, and whether it is the commission or a court that has jurisdiction in the first instance to decide that question.

The commission, in its decision on the attorneys' petition, noted that G. L. c. 150A, like the national labor relations law, "contain[s] no specific language excluding managerial employees from an appropriate bargaining unit. However, both the Commission and the National Labor Relations Board [NLRB] have interpreted the statutes they administer to require the exclusion of managerial employees."[2] The leading case making this distinction under the National Labor Relations Act is *NLRB* v. *Bell Aerospace Co.*, 416 U.S. 267 (1974), reaffirmed in *NLRB* v. *Yeshiva Univ.*, 444 U.S. 672, 682-683 (1980). The commission's decisions on this issue have been in accord with those of the NLRB. *Brookline Hosp.*, CR-3402 (Labor Relations Commission 1974). Whether particular employees are to be classified as managerial has been a matter for initial determination by the expert administrative agency applying the appropriate legal criteria. See *School Comm. of Wellesley* v. *Labor Relations Comm'n*, 376 Mass. 112, 116 (1978) (initial determination by the commission that employees were "managerial" under G. L. c. 150E is accorded deference); *Brookline Hosp., supra*. The commission went on to note in its decision in the attorneys' case that the Supreme Court in *Bell Aerospace Co., supra* at 289 n.18, had used the term "executives" as equivalent to "managerial employees." There is no disagreement that some such distinction between managerial and nonmanagerial employees must be made. The only question is who should make it.

The MBTA contends that in effect the assignment of its

[2]The commission noted that G. L. c. 150E, which does address this issue explicitly, is inapposite here "because of the significant differences in the language" of the two provisions. Nonetheless, it is significant that in those contexts of public employee labor relations specifically covered by G. L. c. 150E, the Legislature recognized the need to distinguish between managerial and nonmanagerial employees.

employees to one or the other of these categories rests entirely in its unreviewable discretion. If it assigns employees to the "executive payroll," this automatically effects the designation of those employees as "executives" and thus outside the scope of the Baby Wagner Act, since G. L. c. 161A, § 19A, provides that the Act shall not apply to "executives." This conclusion is implausible on its face. Certainly the mere coincidence of the word "executive" in both contexts cannot seriously be contended to do the job all by itself. The structure of our labor law as a whole evinces a legislative purpose to grant employees in those sectors to which it applies a right to bargain collectively and a grant of authority to the commission, as the expert administrative agency, to make (except where specifically excluded and subject to judicial review) determinations of the meaning and applicability of that law. See *Saint Luke's Hosp.* v. *Labor Relations Comm'n,* 320 Mass. 467, 469-470 (1946), and cases cited. As a matter of long-standing construction, the commission has distinguished between managerial and nonmanagerial employees. The application of that distinction is in the first instance a matter for the commission. See *School Comm. of Wellesley, supra; Brookline Hosp., supra.* It would take more than the simple coincidence of the word "executive" in "executive payroll" and § 19A to lead us to infer an intent in the Legislature to allow this particular employer to determine for itself to whom the protections of the law shall apply.

The judge in the Superior Court was fully aware of these considerations, but concluded that both the circumstances leading up to the passage of § 19A and a subsequent decision of the commission itself require the stringent reading of that provision proposed by the MBTA. The judge noted that § 19A was enacted as a direct response to our decision in *Massachusetts Bay Transp. Auth.* v. *Labor Relations Comm'n,* 356 Mass. 563 (1970), in which we held that the State's labor laws gave the commission no authority over the MBTA. We held that the statute creating the MBTA recognized it as a "political subdivision of the [C]ommonwealth," and recognized its employees as public employees whose claims and grievances were to be determined by a procedure which made no provision for the intervention of the commission. *Id.* at 565, 568. This history perhaps lends some color to the argument, which the judge did not make, that § 19A, having been

passed to cure a jurisdictional defect, must be read so that its terms and exclusions are themselves jurisdictional. But there is no need to read the statute as depriving the commission of the authority to determine in the usual course of its proceedings to whom the statute applies, subject of course to review in the courts. See *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination*, 364 Mass. 444, 452 (1973), quoting *Saint Luke's Hosp.*, *supra* at 470 ("[w]here the contention is that the [commission] is acting beyond its jurisdiction, the [commission] should have an opportunity to ascertain the facts and decide the question for itself"). Cf. *Myers* v. *Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938). To be sure, if the commission were to wander far off course in its exercise of this primary jurisdiction, an action, such as was brought here, might be appropriate to head it off. See *Saint Luke's Hosp.*, *supra* at 470-471 (where material facts are undisputed, only a question of law as to the commission's jurisdiction is presented, and the agency appears on the face of the facts to be clearly acting beyond the scope of its authority); *American Fed'n of Gov't Employees* v. *Acree*, 475 F.2d 1289, 1292 (D.C. Cir. 1973) (exhaustion of administrative remedies not required where "it is clear beyond doubt that the relevant administrative agency will not grant the relief in question"). But the text and the occasion that provoked it all by themselves do not suggest that the commission should be precluded from exercising its ordinary jurisdiction here.

But there is more. The judge notes that our 1970 decision involved a petition by the same union as is before us here. In that original case, the union sought to certify a bargaining unit consisting of "[a]ll monthly payroll employees [of the MBTA] excluding Executive payroll employees." It was to our decision causing that petition to fail that the Legislature responded in § 19A, using the word "executive" to define an excluded class of employees. Accordingly, the judge concluded that the terms "executive" and persons "on the executive payroll" are equivalents. This line of reasoning is strengthened by the fact that just one month after the passage of the curative legislation, G. L. c. 161A, § 19A, the union again filed a representational petition before the commission seeking to represent all employees on the monthly payroll, excluding executive, confidential, and certain other employees. The

monthly payroll included persons such as lawyers, nurses, and engineers who the MBTA at that time argued should be excluded, because, while not on the executive payroll, they performed managerial or supervisory duties or had access to confidential information. The commission rejected that argument, concluding that "managerial, confidential and supervisory employees are entitled to collective bargaining rights under public employers' standards." *Massachusetts Bay Transp. Auth.*, CR-3270 at 5 (Labor Relations Commission 1972), quoting *Massachusetts Port Auth.*, CR-2940 (Labor Relations Commission 1965). Most compellingly, the commission, CR-3270 at 9, went on to rule:

> "We have researched the judicial history of [§] 19A and conclude that the word 'Executives' as used in the language of the aforementioned statute shall mean those persons who have been afforded that designation by the Authority itself and who are on the Executive Payroll and not the Monthly Payroll. The Executive Payroll was created by the Employer in 1967. . . . Section 19A, was enacted in 1970 as a direct result of the decision of the Supreme Judicial Court . . . . We believe that [the] language [of § 19A] was drafted with the organizational structure of the Employer at that time in mind. Therefore, the exception in the statute for 'executives' refers to those whom the employer itself called 'executive', i.e. those on the Executive Payroll."

The legislative history, together with this contemporaneous interpretation of the statute by the expert agency charged with administering it, persuaded the judge to accept the MBTA's argument. Although the canons of interpretation the judge deployed and the way in which she deployed them are impeccable, we still cannot accept her conclusion. The commission and the union point out that at the time of the commission's earlier decision on which the judge relied, there were only approximately twenty-one employees on the executive payroll out of a total of 6,500 employees. Today the numbers are startlingly different: there are approximately 530 employees on the executive payroll out of a total workforce of approximately 6,880. We agree with the judge that the reductio ad absurdum pressed by the union whereby the

MBTA might exempt itself entirely from the scope of the labor laws by placing all of its employees on the executive payroll, is just that, an absurdity which would call down a swift political remedy. Nevertheless, the striking change in over-all proportions does suggest that some element of abuse may lurk in the gradual accretion of new categories to the executive payroll. Whether any such incremental accretion is reasonable or abusive is just precisely the question that would be asked by the commission in deciding whether a particular class of employee performs managerial functions.

We note also that there has been a change not only in the factual context of the commission's original decision, but in the legal context as well. When the commission made its original decision in 1972, the United States Supreme Court had not yet decided *NLRB* v. *Bell Aerospace Co.*, 416 U.S. 267 (1974), excluding managerial employees from the scope of the national labor laws and giving the criteria for doing so. Nor had the commission yet decided *Brookline Hosp.*, CR-3402 (Labor Relations Commission 1974), which adopted the Supreme Court's categories and reasoning. Thus, in 1970 and 1972, there was not yet a developed body of law for dealing with the necessity of distinguishing between these two classes of employees for purposes of collective bargaining and its protections. In that state of the law, the commission quite understandably took the MBTA's own designation to the executive payroll as a reasonable proxy for a distinction which was felt to be necessary but had not yet fully matured in legal doctrine. While an administrative agency's initial and contemporaneous interpretation of its statute is particularly persuasive, see *Udall* v. *Tallman*, 380 U.S. 1, 16 (1965), neither the agency nor a court must be utterly precluded by such an early interpretation from acknowledging the significance of changed circumstances. See *Commonwealth* v. *Secretary of Health & Human Servs.*, 899 F.2d 53, 62-64 (1st Cir. 1990), judgment vacated on other grounds sub nom. *Sullivan* v. *Massachusetts*, 500 U.S. 949 (1991) (agency must show only a "reasoned basis" for change in interpretation). Of course even changed circumstances would not justify a departure from the text and plain meaning of the statute. But that is not what we have here. The text speaks of executives and says nothing of the executive payroll. And it certainly does not authorize the MBTA to have the last word on who

shall enjoy coverage under the statute by its unilateral and unreviewable assignment of employees to the executive payroll. This is a result sufficiently out of keeping with the structure of the statute and the context of the laws governing labor management relations generally, that we would not read § 19A that way unless compelled to it. As we have sought to show, we are not.[3]

The declaratory judgment is vacated. The commission may proceed to determine, subject to judicial review in the usual course, if the superior officers are managerial employees, i.e., executives within the meaning of G. L. c. 161A, § 19A.

*So ordered.*

---

[3]We also reject the MBTA's contention that G. L. c. 161A, § 19, grants the MBTA "inherent management rights" which preclude the commission's determining whether certain MBTA employees are "executives" within the meaning of G. L. c. 161A, § 19A. Section 19 limits the "authority [of the directors of the MBTA] to enter into collective bargaining agreements with respect to matters of inherent management right" including the right "to classify the various positions of the authority." This section is inapposite, however, because it limits only the authority of the directors of the MBTA to bargain away certain rights to the union. Section 19, on its face, has no effect on the authority of the commission under § 19A to determine which MBTA employees are entitled to collective bargaining rights. We see no reason to infer from § 19 that the Legislature intended these "inherent management right[s]" to override the authority vested in the commission to determine the scope of the labor laws.