TOWN OF WENHAM vs. LABOR RELATIONS COMMISSION.

No. 96-P-2051.

Suffolk. November 6, 1997. - January 23, 1998.

Present: PERRETTA, KASS, & GREENBERG, JJ.

*Administrative Law,* Agency's interpretation of statute. *Fire Fighter,* Volunteer fire fighter. *Public Employment,* Collective bargaining. *Labor,* Collective bargaining, Fire fighters, Bargaining unit.

The Labor Relations Commission did not err in granting collective bargaining rights to a group of call fire fighters who the commission had reasonably determined met sufficient criteria of continuity of employment and regularity of work in the performance of their duties to entitle them to such rights. [197-199]

APPEAL from a decision of the Labor Relations Commission.

*Laurence J. Donoghue* for the plaintiff.

*John B. Cochran* for the defendant.

KASS, J. Wenham's fire department relies entirely on "call" (volunteer) firefighters.[1] Those call firefighters organized the Wenham Call Fire Fighters Association (union), and the union petitioned the Labor Relations Commission (commission) for certification as the bargaining unit for the call firefighters. Over the opposition of the town, the commission so certified the union. See G. L. c. 150E, §§ 3 and 4. The town refused to bargain with the union and, in response to a complaint made by the union, the commission found that the town's refusal constituted a prohibited labor practice. See G. L. c. 150E, § 10(*a*)(5). The issue is whether the commission may lawfully certify as a labor bargaining unit an association of public employees who work as sporadically as the Wenham firefighters. We affirm the decision of the commission.

---

[1]Even the supervisory personnel are part-time. The chief has an annual salary of $4,046 and two assistant chiefs and a captain have an annual salary of $2,697.

Because the town has no full-time firefighters, its thirty-one call firefighters make up its sole firefighting force. The fire department is managed by a board of fire engineers appointed by the selectmen pursuant to G. L. c. 48, § 45, and is supervised by four officers: a chief, two assistant chiefs, and a captain. Call firefighters receive their appointments annually from the board of fire engineers. The duties of the fire department include fighting fires, providing emergency medical services, handling hazardous materials, and covering the fire station during weather emergencies.

There are no strength, conditioning, age, or residence requirements for service as a call firefighter. Response to alarms is voluntary and, to be eligible for reappointment, a call firefighter need not respond to a specified percentage or number of calls in the preceding year. However, every call firefighter is required to attend a departmental drill once a month. The town pays call firefighters on an hourly basis.

The town spends approximately $70,000 per year on call firefighters' wages, and a call firefighter who responds regularly to calls earns an average of $5,000 to $6,000 per year. In 1994, there were 427 calls for the call firefighters. On average, eighteen firefighters responded to each call. The average number of responses per firefighter was 151 per year; the average hours of work per firefighter was 216 hours per year. During the first six months of 1995, individual call firefighters responded to an average of sixty-six out of 242 total calls and worked an average of 115.25 hours.

The commission recognized that some of the Wenham call firefighters worked only sporadically, but found that many of them demonstrated a substantial and continuous working relationship with the town. Based on that finding, the commission formulated a ruling that all call firefighters who responded to thirty-three percent of all calls in the preceding year were entitled to collective bargaining rights under G. L. c. 150E, § 3.[2] Accordingly, the commission ordered an election at which those who met the thirty-three percent test would vote whether they wished to be represented by the union in bargaining with

[2]In 1994, fourteen of the thirty-one call firefighters (excluding Robert Blanchard, who became acting captain during the period) responded to at least thirty-three percent of the calls during the year. For the first half of 1995, eight of the thirty-one call firefighters (excluding the acting chief) responded to at least thirty-three percent of the calls.

the town. On December 4, 1995, seven of the eight call fire-fighters who participated in the election voted in favor of the union and, as a result, the union was certified by the commission.

The town's position is that the call firefighters are casual employees who work so sporadically that the commission erred in extending to them collective bargaining rights. Under G. L. c. 150E, § 3 (as inserted by St. 1973, c. 1078, § 2), the commission is charged to:

> "prescribe rules and regulations and establish procedures for the determination of appropriate bargaining units which shall be consistent with the purposes of providing for stable and continuing labor relations, giving due regard to such criteria as community of interest, efficiency of operations and effective dealings, and to safeguarding the rights of employees to effective representation."

That statutory language sets out a broad legislative policy which is left to the administrative agency to interpret. Courts review such agency interpretations with a distinct inclination to deference. *School Comm. of Wellesley* v. *Labor Relations Commn.*, 376 Mass. 112, 116 (1978). *Massachusetts Bay Transp. Authy.* v. *Labor Relations Commn.*, 425 Mass. 253, 256-257 (1997). *Welford* v. *Nobrega,* 30 Mass. App. Ct. 92, 104 (1991), *S.C.*, 411 Mass. 798 (1992). Affirmation of an administrative agency decision, therefore, is often less a judicial endorsement of the decision than it is a ceding of function within judicially drawn boundaries.

More than once the commission has interpreted the statute to exclude from collective bargaining casual employees who work only sporadically. See, e.g., *Town of Lincoln*, 1 M.L.C. 1422 (1975); *Town of N. Reading*, 6 M.L.C. 1565 (1979); *Town of Sturbridge*, 18 M.L.C. 1416, 1420 (1992). To determine whether a group of employees is casual, the commission examines four major factors affecting the stability of the proposed bargaining relationship: continuity of employment, regularity of work, the relationship of the work performed to the needs of the employer, and the amount of work performed by the employees. *Board of Regents of Higher Educ.*, 11 M.L.C. 1486, 1491 (1985). *Town of Wenham*, 22 M.L.C. 1237, 1244-1245 (1995).

In the case at bar, the commission found that because the

town has no full-time firefighters and relies exclusively on call firefighters for fire protection, there is a stable demand for call firefighters. By reason of the continuity of demand and the relative continuity of service of a core group of call firefighters, the commission thought that the relationship of the work performed to the needs of the employer and the amount of work performed by the employees militated in favor of granting bargaining rights. The commission recognized that an examination of individual firefighters' work schedules was necessary to assess continuity of employment and regularity of work. After examining those schedules, the commission concluded that some of the call firefighters did not work with sufficient regularity to justify, as to them, the imposition of collective bargaining on the town. As to call firefighters who had responded to at least thirty-three percent of all calls in the previous year, the commission determined that they met the sufficient continuity of employment and regularity of work criteria that entitled them to collective bargaining rights. See *Board of Regents of Higher Educ.*, 13 M.L.C. 1173, 1183-1184 (1986) (concept of "regularity" of work varies depending on the nature of the employer's operation and the type of work performed by the employees).

That resolution was rational and founded in precedent in analogous disputes previously acted on by the commission. See *Board of Trustees of Univ. of Mass.*, 3 M.L.C. 1179, 1197-1198 (1976) (only the part-time community college instructors who had worked at least three consecutive semesters were entitled to collective bargaining rights); *Board of Regents of Higher Educ.*, 11 M.L.C. at 1497. See also *Boston Sch. Comm.*, 7 M.L.C. 1947, 1951 (1981) (holding that only substitute teachers who had worked at least sixty days in a 180-day school year were entitled to collective bargaining rights). The bargaining unit devised by the commission protects the rights of public employees who have an important employment relationship with the town, but protects the town from the costs that would be associated with collective bargaining with employees whose employment interests are attenuated.

Contrary to the contention of the town, the commission's decision is consistent with previous rulings involving volunteer firefighters. In two instances, when call firefighters were the sole fire protection force for a town, the commission permitted them to unionize. See *Town of Leicester*, 9 M.L.C. 1014, 1017-1019 (1982); *Town of Stow*, 11 M.L.C. 1312, 1318 (1984).

However, in those cases, all call firefighters were expected to respond to every alarm. In cases in which there was a full-time fire force in addition to the call firefighters, the commission has refused to extend collective bargaining rights to the call firefighters. *Town of Lincoln*, 1 M.L.C. at 1423-1424. *Town of N. Reading*, 6 M.L.C. at 1566. *West Barnstable Fire Dist.*, 17 M.L.C. 1076, 1077-1078 (1990). *Town of Sturbridge*, 18 M.L.C. at 1416-1420. *Town of Winchendon*, 20 M.L.C. 1515, 1517-1518 (1994).

It oversimplifies the commission's analyses in the call firefighter cases to say that voluntariness is the pivot on which decision turns. No single factor has been dispositive; rather, the commission has considered the function, nature, and character of the employees' work in relation to the needs of the employer on a case-by-case basis. *Worcester County*, 17 M.L.C. 1352, 1358 (1990). If there has been a particularly weighty factor, it has been the presence or absence of a full-time force of firefighters. *Town of Stow*, 11 M.L.C. at 1318.

As the commission's thirty-three percent solution is a reasonable one, susceptible of consistent application, we defer to it.

*Decision of Labor Relations Commission affirmed.*